# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Teng Moua, Juan Martinez, Cheri
Martinez, Kua Vang Xiong, Maiku Thao,
Cherpao Yang, Bee Vang, Vang Pao
Moua, Mailou Xiong Yang, Vangxue
Yang, Eng Thao, Choua Moua, Meshack
Balira, Ferdinand Nyambarya, VMS Inc.,
Richard Chang, Lee Wong Chang,
Khonekham Dejvongsa, Nouphet
Dejvongsa, Diego Cortez Dominguez,
Mohamud Egal, Mohamed Osable, Hussein
Osable, Ifran Jimale, Layla Jimale, Mohamed
Jimale, Paul Bel George, Chue Hang, Tong
Thao Hang, Rexhep Krasniqi, Tou Lor, Mai
Moua Vue, Arif Metushi, Wa Her Moua,
Mee Yang, John Schroeder, Judy Schroeder,
Berhane Tesfai, Dual Cykao Thao, Xong Thao
Yang, Kou Thao, Yang Xiong, Kevin Vilavong,
Chong Xiong, Ko S. Xiong, Blia Yang, Ying
Cheng, Chang Yang, Choua Lor, Mai Blia
Yang, Pang Yang, Lue Her, for themselves
and all other persons similarly situated as
franchisees of Jani-King of Minnesota, Inc.
and Jani-King International, Inc.

No. 08-CV-4942
Class Action

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO
JANI KING'S MOTION FOR
PARTIAL JUDGMENT ON THE
PLEADINGS**

Plaintiffs,

v.

Jani-King of Minnesota, Inc., a Texas
Corporation, Jani-King International, Inc.,
a Texas Corporation, George Selman, a
Minnesota resident, and Steve Schmidt,
a Minnesota resident.

Defendants.

1

## INTRODUCTION

This case, originally brought by the proposed class plaintiffs in Minnesota state court and now before this Court following Defendants' removal,[1] arises out of the Defendants' predatory and unlawful practices used in convincing and coercing the above-named individuals, most of whom recently immigrated to the United States and possess less-than-perfect English language skills, into spending thousands of their hard-earned dollars to purchase a cleaning franchise from Defendant Jani-King of Minnesota, Inc. (hereinafter "JKMn"). The deceitful practices and unlawful misconduct employed by JKMn, Selman and Schmidt continued to torment and damage the franchisees even after they purchased their franchises.

Perhaps with a healthy dose of wishful thinking, the Defendants ask the Court, at this remarkably early stage in the litigation, to render the extraordinary remedy of judgment on the pleadings on three of the counts alleged by the proposed class plaintiffs in this action. Courts reserve granting judgment on the pleadings for those very rare cases in which the facts as alleged in the pleadings alone, taken as true, nevertheless entitle the opposing party to judgment as a matter of law. Because significant questions of material fact exist, and because several legal arguments relied upon by the Defendants have no merit, the Defendants' motion for partial judgment on the pleadings should be denied in all respects.

---

[1] The question of whether this Court has jurisdiction to hear this action as a whole and, more specifically, the Defendants' instant motion is the subject of Plaintiffs' currently pending Motion to Remand also scheduled for oral argument on November 25, 2008.

## STATEMENT OF FACTUAL ALLEGATIONS

For the purposes of this motion, the Court must accept as true the facts as alleged in the Complaint, and must ignore any factual allegations put forth by the Defendants in their answer.  As such, the Court must conclude that each of the above-named plaintiffs, after being lured by false promises and misrepresentations, and after being subjected to high-pressure sales tactics, expended significant sums of money and entered into sophisticated, English-only, franchise agreements (hereinafter "Agreement" or "Agreements") in order to purchase a Jani-King cleaning franchise from JKMn. (Complaint ¶¶ 29, 47, 51, 52, 55.)

The Agreements obligated, among many other things, JKMn to provide monthly business to each franchisee in an amount contractually determined based upon the amount each franchisee paid as initial "franchise fees."  (Complaint ¶ 56.)  Even though JKMn did not have enough cleaning business to offer their already-existing franchisees, the Defendants persisted in their concentrated efforts of luring these Minnesota residents into purchasing a costly franchise, without JKMn's ability to fairly honor its end of the bargain. (Complaint ¶ 48.)

Indeed, JKMn's lack of customer contracts and ever-increasing contractual obligations to its expanding rolls of franchisees led JKMn, Selman and Schmidt to devise various schemes and plans in order to pretend to satisfy their obligations to numerous plaintiffs and potential class members.  For example, each of the Defendants (and/or those under their control) participated in the concocted system of offering the same cleaning account to multiple franchisees at the same time.  (Complaint ¶¶ 64, 66, 67.)

3

The first franchisee to accept the account received the right to clean that account and the monthly revenue associated with it.  However, those franchisees who informed Jani-King that they would need more time to decide if they could accept the account (i.e., they could not commit to accepting the account *on the spot* because they had to first check with a spouse or business partner prior to accepting, had to determine if staffing would permit acceptance, or had to determine if the new account would conflict with already existing business, etc.) were deemed to have "declined" the account and "offered" business and JKMn "charged" the amount against their monthly obligation.  (Complaint ¶¶ 63, 64.)

Similarly, franchisees frequently received account offers as a result of a Jani-King employee (including, but not limited to, Selman and Schmidt) leaving the franchisee a voicemail message offering the account or an electronic page requesting the franchisee to call Jani-King.  If the franchisee did not respond to Jani-King prior to a different franchisee's acceptance of the cleaning account, the franchisee was again deemed to have "declined" the account and that amount was also "charged" against JKMn's monthly obligation to the franchisee.  (Complaint ¶ 62.) In several instances (detailed in the Complaint), franchisees also later discovered that Jani-King charged accounts against a franchisee even though Jani-King never even offered the account to the franchisee.  (Complaint ¶¶ 78, 79.)  In this manner, Jani-King fraudulently and unlawfully charged one account's billing amount against its obligations to multiple franchisees at one time.  (Complaint ¶ 64.)

4

In an attempt to meet its monthly obligations, Jani-King employed another artifice, which Selman, Schmidt and other individuals under their direction and control carried out, whereby Jani-King solicited or, worse yet, <u>fabricated</u> customer complaints against franchisees. (Complaint ¶ 66.) As a result, and without allowing the franchisee to cure any alleged cleaning defect as required under the Agreement, Jani-King, Selman and Schmidt then took the account from the assigned franchisee and transferred the cleaning business to another franchisee; again, JKMn did so to fraudulently conceal its inability to provide the contractually-agreed upon obligations to its franchisees. JKMn could then charge the monthly amount against both the old and new franchisee. (Complaint ¶ 66.) Put differently, Jani-King could take away an account under these false pretenses and then offer it to multiple franchisees at the same time. By utilizing this tactic, JKMn and its employees purportedly "satisfied" their monthly obligations to their franchisees by essentially "robbing Peter to pay Paul." (Complaint ¶ 68.)

Yet another unlawful and deceitful ploy carried out by the Defendants involved the intentional and significant underbidding of the amount franchisees would earn for cleaning accounts. (Complaint ¶ 72.) This tactic served dual purposes. First, it purportedly brought in more cleaning contracts, albeit unprofitable ones, which JKMn churned from one franchisee to another as detailed above. Second, it also provided some franchisees who received a grossly underbid contract an "incentive" to turn in the account and seek other cleaning opportunities (with JK having reaped the benefit of "offering" this business). In many instances (described in the Complaint), franchisees found themselves and their employees working for less than minimum wage in cleaning an

account due to Jani-King's policy of severely underbidding accounts. (Complaint ¶ 72.) When a franchisee would turn in an account because of excessive cleaning requirements (often "unpaid for") and concomitant paltry monthly income, Jani-King still continued to charge the turned-in account against the original franchisee, but also offered this account to multiple other franchisees in such a manner (again, as described in the Complaint) so that the value of this "underbid" contract could be counted against multiple franchisees at once. (Complaint ¶ 68.)

## PROCEDURAL POSTURE

The above-named fifty two plaintiffs served the Hennepin County Court Class Action Complaint on the Defendants on July 16, 2008. The potential class includes all persons who bought a Jani-King franchise in the State of Minnesota between January 1, 2000 and June 30, 2008. The Defendants filed their Answer, as well as a Notice of Removal, with this Court on August 18, 2008. Plaintiffs' currently pending motion to remand to state court questions whether this Court has jurisdiction to preside over this action as a whole, including Defendants' motion for partial judgment on the pleadings.[2]

## STANDARD OF PROOF

To prevail on a motion for partial judgment on the pleadings, the movant must satisfy an exceptionally rigorous standard. A party may file a motion for judgment on the pleadings after the pleadings are closed but within such time as to not delay trial. Fed. R. Civ. P. 12(c). This motion is designed to be used only when disputes as to material facts

---

[2]   Plaintiffs Motion for Remand was filed first and will be heard first and if the Court remands this matter, there will be no need to rule on this present Motion brought by Jani-King.

do not exist and judgment as a matter of law is appropriate. (Emphasis added) *Thimbleberries, Inc. v. C & F Enterprises, Inc.*, 142 F.Supp.2d 1132 (D.Minn. 2001) citing *National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993), *cert. denied,* 510 U.S. 861 (1993). Motions for judgment on the pleadings only have utility when all of the material allegations of fact contained in the pleading are admitted or not controverted and only questions of law remain. (Emphasis added) 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1367, at 207-208 (3d ed.2004).

   In deciding the merits of a motion for judgment on the pleadings under Rule 12(c), the Court applies the same standard as if the motion was one for dismissal for failure to state a claim under Rule 12(b)(6). *Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir. 1990). Federal courts generally hesitate to grant judgment on the pleadings, because "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense." *Carrasco v. Fiore Enterprises*, 985 F.Supp. 931 (D.Ariz. 1997) citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 1368, at 222-223 (3d ed.2004).

   In fact, a motion for judgment on the pleadings is appropriate only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. (Emphasis added) *Faibisch v. University of Minnesota*, 304 F.3d 797 (8th Cir. 2002); *see also United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000); *Montgomery v. Independent School Dist. No. 709*, 109

7

F.Supp.2d 1081, 1086 (D.Minn. 2000); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

In considering a motion for judgment on the pleadings, the Court must accept as true the facts as alleged in the Complaint, must view those facts in the light most favorable to the non-moving party, and must make all reasonable inferences in favor of the non-moving party. *Morse v. Dun & Bradstreet, Inc.*, 87 F.Supp.2d 901, 903 (D.Minn. 2000); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Furthermore, the Court must also disregard all contravening assertions made by the Defendants in their Answer as false. *Njaka v. Wright County*, 560 F.Supp.2d 746, 751 (D.Minn. 2008); citing 5C Wright and Miller, *Federal Practice and Procedure* § 1368, at 230 (3d ed.2004).

A motion for judgment on the pleadings must not be granted "unless it appears beyond doubt that the Plaintiffs can prove no set of facts which would entitle [them] to relief." *St. Paul Ramsey County Med. Ctr. v. Pennington County*, 857 F.2d 1185, 1187 (8th Cir. 1988); *see also Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986); *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994). Or, as the Supreme Court has put it, a court should grant the motion and dismiss the action "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

## LEGAL ARGUMENT

I.    **The Defendants' Motion for Partial Judgment on the Pleadings on Count IV (Fraud/Misrepresentation) Must be Denied Because Plaintiffs' Complaint Provides Specific Information to Give Defendants Notice of the Particular Misconduct Alleged.**

Jani-King argues that the fraud and misrepresentation claims should be dismissed in their entirety because the Plaintiffs have not pleaded them with sufficient particularity, to include the who, what, when, where and how of the alleged fraud/misrepresentation. (Defendant Jani-Kings' Memorandum in Support of its Motion for Partial Judgment on the Pleadings, p. 4.)   However, when taken as a whole, Plaintiffs' Complaint satisfies Rule 9(b) and puts Defendants on clear notice of the particular misconduct alleged against each of them.

A complaint satisfies Rule 9(b) because, when taken as a whole, it "adequately puts the defendant on notice of the particular instances of misrepresentation claimed by the plaintiff." *Evangelical Lutheran Church in Am. Bd. of Pensions v. Spherion Pac. Workforce LLC*, 2005 WL 1041487 (D.Minn. 2005).  The law does not require Plaintiffs to plead the exact dates on which the defendant allegedly made the misrepresentation. *See Solvay Pharms., Inc. v. Global Pharms.*, 298 F.Supp.2d 880, 885-86 (D.Minn. 2004) (allegation that defendants had been improperly marketing their products as "generic" versions of plaintiff's drugs on ongoing basis for past "several years" sufficient under Rule 9(b)).

If the Court determines that certain of the Plaintiffs' fraud allegations lack the specificity required by Rule 9(b), any ambiguities that exist concerning the "who, what,

where, when, and how" of the fraud claims can be clarified during discovery. *See Ray v. Citigroup Global Markets, Inc.*, 2003 WL 22757761 (N.D. Ill. 2003) (where complaint contained enough details to survive motion to dismiss under Rule 9(b), "any additional detail" concerning the nature of plaintiff's fraud claims could "be obtained via the discovery process").  Even where fraud and misrepresentation claims lack the required specificity, the courts will provide, and have the authority to provide Plaintiffs with the opportunity to amend their Complaint under Rule 15 of the Federal Rules of Civil Procedure in order to come into more full compliance with the pleading requirements if it sees fit.  *See, e.g., ADT Security Services., Inc. v. Swenson*, 2008 WL 2828867 (D.Minn, 2008) (granting leave to amend complaint to allege additional facts to support fraud); *See also, Carlson v. A.L.S. Enters., Inc.*, 2008 WL 185710 (D.Minn. 2008); *Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 170 F.R.D. 361 (S.D.N.Y. 1997); *Hijazi Medical Supplies v. AGA Medical Corp.*, 2008 WL 398831 (D.Minn. 2008); *Gunderson v. ADM Investor Services, Inc.*, 1997 WL 570453 (N.D.Iowa 1997) (granting leave to amend complaint to allege additional facts to support fraud).

For the most part, Defendants claim seven instances of insufficiently pleaded fraud or misrepresentation allegations in the Complaint.  However, and as demonstrated below, when taken as a whole, the Complaint places the Defendants on sufficient notice of the fraud claims brought against each of them.  They can mount an effective defense and are not prejudiced in any manner because of any alleged lack of pleading specificity.

A.    Plaintiffs' Fraud Allegation #1

The most prevalent, if not obvious, theme throughout Plaintiffs' Complaint is that Jani-King promised <u>each</u> of these franchisees that, in exchange for their hard-earned savings paid as a franchise fee, it would provide them with a specific amount of cleaning business per month (as outlined in the franchise agreements and offering circulars) which JKMn, Selman, Schmidt, and JKI knew it could not fulfill.   Starting as early as the introduction, and continuing throughout the entire Complaint, the "who, what, where, when, and how" are routinely identified.

The Complaint, when taken as a whole, puts all Defendants on notice of the particular fraud alleged by all Plaintiffs, starting with the introduction and continuing throughout the pleading.   The introduction states that "the franchisors [the **"who"**] purport to sell cleaning 'franchises' through which these individuals [the **"who," the plaintiffs individually**] can achieve their dreams, even while the franchisors know full well that they do not have sufficient business accounts to satisfy their obligations under the various franchise agreements" [the **"what"**].   (Complaint, p. 2.)   The Complaint continues to state "those promises went unfulfilled and were dashed by the franchisors and the individual defendants as described herein" [**adding Selman and Schmidt into the "who" category**].   (*Id.*)

The Complaint further provides that Selman and Schmidt materially aided in the acts, omissions and/or transactions which constitute the violations of statutory and common law..." (Complaint ¶¶ 34, 35.)   The files and records of JKMn and JKI which

11

have not yet been disclosed to the Plaintiffs will add <u>more</u> detail as to "how" Selman and Schmidt aided this process.

Again, paragraph 47 of the Complaint, establishes the "who, what, where, when and how" of Plaintiffs' claim that "in order to induce the Plaintiffs and other class members into buying one of their cleaning franchises (which their agents and employees sell through a variety of high pressure sales tactics and other schemes described below [the **"how"**]), Defendants negligently and/or intentionally misrepresented that Jani-King has sufficient business to provide the guaranteed monthly income promised to Plaintiffs and the class members pursuant to their franchise agreements" [the **"what," "where," "when" and "how"**].  (Complaint ¶ 47.)

Paragraph 48 of the Complaint provides that "At the time <u>when</u> and after Plaintiffs and other class members executed their franchise agreements [**"where," "when" and "how"**], Defendants knew Jani King did not have sufficient business and cleaning accounts under contract to satisfy the terms of Plaintiffs' franchise agreements [**"what"**], yet they continued to advertise and still continue to advertise the sale and purchase of cleaning franchises, solicit more and more new franchises, and enter into new franchise contracts with new franchisees [**"what"**].  (Complaint ¶ 48.)  JKI, as alleged in the Complaint, instructs and directs many of the affairs and operations of JKMn.  (Complaint ¶ 32.)

Plaintiffs clearly meet the "who, what, where, when, and how" as to the allegation that JKMn, JKI, Selman and Schmidt engaged in fraud related to the misrepresentations and omissions regarding Defendants' ability to fulfill its contractually obligated duties to

each Plaintiff.  The Complaint, as alleged, applies these allegations as to each named Plaintiff.  JKMn and its employees, including but not limited to Selman and Schmidt, promised prospective franchisees a specific amount of business, and the Plaintiffs relied upon those the false statements and misrepresentations to their detriment when determining whether to purchase a franchise.

B.    Plaintiffs' Fraud Allegation # 2

This fraud allegation centers on false and/or misleading statements made by the Defendants regarding the opportunity each Plaintiff, as franchisee, would have to cure any alleged cleaning deficiency before being penalized by Jan-King.  The Complaint alleges that JKMn, JKI, Selman and Schmidt ["**who**"] represented to franchisees that Jani-King would provide each franchisee ["**who**"] with an opportunity to cure flaws in their cleaning ["**what**"], when instead, they would remove accounts from the franchisees without giving them an opportunity to cure the alleged flaws in their cleaning as promised. (Complaint ¶¶ 65, 80.)  The Complaint further alleges that each Plaintiff's Agreement contains this representation ["**where**," "**when**" and "**how**"].  (Complaint ¶ 65.)

The Complaint, in paragraph 89, cites an instance where Schmidt took an account from franchisees Juan and Cheri Martinez without providing the required opportunity to cure any alleged problems so that Schmidt and JKMn could give that account to another franchisee, and to punish the Martinezes.  (Complaint ¶ 89.)  The Complaint further states that most, if not all, of the Plaintiffs have experienced this same misconduct by

13

Jani-King and its agents, which include Selman and Schmidt.   (Complaint ¶ 124.)
Details and further specifics can and will be gleaned from Defendants' files.

The Complaint also states that Jani-King ["**who**"] further told the Plaintiffs
["**who**"] that they would have an opportunity to cure any deficiencies in their work
before taking the account from them ["**what**"].  (Complaint ¶ 140.)  Instead, Defendants
and other Jani-King representatives ["**who**"] preemptively and routinely informed
Plaintiffs that their work did not meet their amorphous standards and that the account was
being taken from them or that the account person already signed a document transferring
the account to another franchisee, without providing the account holder the opportunity
to cure.   (*Id.*)   Finally, Plaintiffs allege in the Complaint that Selman and Schmidt
materially aided in the acts omissions and/or transactions which constitute the violations
of statutory and common law.  (Complaint ¶¶ 34, 35.)

The pleadings in the Complaint satisfy the particularity requirement established by
Rule 9(b).  The Complaint sufficiently details the "who, what, where, when and how"
such that the Defendants are on notice of the claims alleged against them.  The pleading
provides the requisite detail to allow the Defendants to prepare a defense (if any exists).

C.     Plaintiffs' Fraud Allegation # 3

This allegation, as referenced by Defendants, refers to misrepresentations made as
to earnings each Plaintiff could expect from their franchise.  The Complaint specifically
alleges that Defendants ["**who**"] represented to franchisees ["**who**"] that their earning
potential was limited only by their desire and ability to work hard, and that such efforts
could lead to the franchisee earning as much as a doctor ["**what**"].   The Complaint

14

clearly alleges that the Defendants <u>knew</u> they did not have sufficient contracts to even fulfill their then-existing obligations, let alone sufficient business to provide the nearly unlimited growth potential they repeatedly and fraudulently represented to the Plaintiffs. (Complaint ¶ 48.)   Defendants' made the knowingly false assertions that franchisees could achieve the income level commonly attributed to a doctor with one purpose in mind; luring Plaintiffs and others, through the use of grossly false promises and income claims that Defendants themselves knew to be unattainable, into purchasing a Jani-King franchise.

This allegation should be found sufficient, especially in light of the other detailed allegations of fraud and misrepresentation to place the Defendants, and each of them, on notice of the fraudulent conduct and allow them to begin preparing a defense thereto.

Any claimed or perceived insufficiencies can be remedied by the discovery process or by permitting the Plaintiffs to amend the Complaint. *See*; *Carlson v. A.L.S. Enterprises, Inc.*, 2008 WL 185710 (D.Minn. 2008) (additional detail concerning fraud claims could be obtained through the discovery process); *see also, ADT Security Services., Inc. v. Swenson*, 2008 WL 2828867 (D.Minn. 2008) (granting leave to amend complaint to allege additional facts to support fraud).

D.    Plaintiffs' Fraud Allegation #4

The Complaint also makes allegations that Jani-King fraudulently promised to provide each franchisee with various forms of business support, including account referrals, inspections, bidding services and the opportunity to cure alleged defects, when in fact Jani-King failed to provide them as promised. (Complaint ¶ 150.)   Plaintiffs'

Complaint contains multiple allegations to support this claim throughout. First and foremost, each franchisee's Agreement contained these misrepresentations [**"when," "where" and "how"**]. Thus, JKMn [**"who"**] represented to each franchisee [**"who"**] when selling them a franchise [**"when" and "where"**], at training [**"when" and "where"**], and at the time and place of reviewing and signing the Agreement [**"when," "where" and "how"**] that they would receive the support as outlined in paragraph 150 of the Complaint [**"what"**]. Defendants made these statements in order to induce the Plaintiffs into purchasing a franchise.

This fraud allegation provides Defendants with sufficient information regarding the "who, what, where, when and how" to allow them to prepare a proper defense to this fraud claim and must not be dismissed by way of partial judgment on the pleadings.

     E.    <u>Plaintiffs' Fraud Allegation #'s 5-7</u>

Defendants call into question the sufficiency of the pleadings as it relates to the allegations that the Defendants made various promises to the Plaintiffs regarding the type and location of accounts which would be offered to the franchisees. This allegation rests upon the fact that the Defendants promise the Plaintiffs that each would be offered cleaning accounts within a specified geographic vicinity,[3] would not be offered cleaning

---

[3] In fact, Defendants themselves specifically told and trained franchisees to reject cleaning accounts too far away because they were not a profitable use of time. Presumably, the Defendants informed every single franchisee, including these Plaintiffs, to do this while simultaneously <u>not</u> informing those same franchisees that "rejection" of an account for those very reasons did <u>not</u> exempt or exclude the business from the monthly obligations JK owed. Speaking a half truth (or omission) is just as fraudulent as a whole lie. *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006 (8th Cir. 1984) *quoting Newell v. Randall*, 19 N.W. 972, 973 (Minn. 1884).

accounts whose hours of cleaning conflicted with other cleaning accounts already being serviced by the franchisee[4], and that franchisees would not be offered cleaning accounts for locations that posed religious objections.[5]

To support this allegation, the Complaint specifically alleges that Jani-King's representatives ["who"] asked each franchisee ["who"] their preferred geographic preference ["what"]. (Complaint ¶¶ 60, 77, 85, 94, 110, 114, 123, 124.) The Complaint further provides that Jani-King's representatives ["who"] informed Plaintiffs ["who"] that they could accept accounts in their preferred geographic area and/or in close proximity to their residence ["what"]. (Complaint ¶ 60.) Furthermore, the Complaint provides that at the required training programs ["where" and "when"] Jani-King ["who"] provided a map with a five to ten mile radius ["what" and "how"] within which each franchisee ["who"] should accept business.

Contrary to Defendants' assertion, the Plaintiffs do plead facts (as specifically identified above) to support this allegation. The facts alleged establish the "who, what, where, when, and how" of the alleged misrepresentation, and therefore, the claim may not be dismissed. On the whole, Plaintiffs' Complaint gives the Defendants adequate notice to allow them to prepare their case and draft responsive pleadings. *See Midwest Federal Sav. and Loan Ass'n v. Green Tree Acceptance, Inc.*, 1989 WL 411604 (D.Minn. 1989).

---

[4] After all, it should go without saying that it is impossible for a franchisee to clean two accounts at different locations at the same time.

[5] For example, several franchisees were assured that they would not be offered accounts at restaurants or bars because it was against their religious beliefs to be in the proximity of alcohol.

II.     **The Defendants' Motion for Partial Judgment on the Pleadings on Count VIII (False Statement in Advertising) Must be Denied Because Plaintiffs Have Identified False and Misleading Statements in a Public Advertisement.**

In support of their motion for judgment on the pleadings of Plaintiffs' False Statement in Advertising (M.S.A. §325F.67), the Defendants rely upon several factual and legal premises that have no merit and should be quickly dispensed of by the Court. Defendants claim that M.S.A. §325F.67 applies to "public advertisements" only and, therefore, the Complaint does not identify any false or misleading statements in a "public advertisement" and the count must be dismissed. (Defendant Jani-Kings' Memorandum in Support of its Motion for Partial Judgment on the Pleadings, p. 12.) However, because Plaintiffs' Complaint identifies false and misleading statements made in a "public advertisement," Defendants' request for judgment on the pleadings of this count must be denied.

The False Statement in Advertising claim arises under M.S.A. §325F.67 which states in relevant part:

> Any person, firm, corporation, or association who...makes, publishes, disseminates, circulates, or...causes, directly or indirectly, to be made, published, disseminated, circulated... in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in *any* other way, an advertisement of *any* sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is

declared to be a public nuisance and may be enjoined as
such.

(Emphasis added). The Uniform Franchising Offering Circulars ("UFOC") are offering
circulars published and disseminated in Minnesota by JKMn. The UFOCs are distributed
with the intent to induce Minnesota citizens into purchasing a Jani-King franchise and all
of its attendant goods, wares, services and intangibles. The Minnesota Franchise Act
(M.S.A. §80C.04) requires that all franchisors file a "public offering statement" with the
State Commissioner of Commerce. Jani-King's offering circulars are on file with the
State Commissioner of Commerce as their "public offering statements" and are clearly
"public advertisements" as required by M.S.A. §325F.67.

The Complaint contains and incorporates many allegations into Count VIII of the
Complaint specifically regarding the misrepresentations contained in the UFOC;

- The UFOC fails to disclose what happens in the event an account is offered to a
  franchisee but declined. (Complaint ¶ 60.)

- The UFOC contains a number of misrepresentations, including that 100% of all
  franchisees received or were offered their Initial Finder's Fee Business.
  (Complaint ¶ 75.)

- The UFOC misrepresents that Jani-King provides franchisees with an
  opportunity to cure alleged cleaning defects when in fact they do not.
  (Complaint ¶ 80.)

- Most, if not all, of the Plaintiffs received a UFOC with these misleading and
  untrue statements. (Complaint ¶ 124.)

- The Defendants made other misstatements and misleading statements to the
  Plaintiffs both in the UFOC and in their meetings. (Complaint ¶ 140.)

- The UFOC contains an untrue statement that 100% of all franchisees receive or
  are offered their initial business offering. (Complaint ¶ 141.)

19

The Complaint not only identifies a "public advertisement," but it also specifically alleges false, misleading and untrue statements (as well as omissions required to be disclosed) contained in that particular "public advertisement."

Additionally, it must be pointed out that in a very similar case (the defendant moved to dismiss plaintiff's False Statement in Advertising claim alleging that a website did not constitute an "advertisement"), this Court specifically noted that as "a result of section 325F.67's expansively broad definition of advertisement, 'book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter or...an advertisement of any sort,' a fact issue is presented and is not resolvable on a motion to dismiss." *Minnesota ex rel. Hatch v. Fleet Mortg. Corp.*, 158 F.Supp.2d 962, 967 (D.Minn. 2001). At the very least, the question of whether the UFOC constitutes an "advertisement" under section 325F.67 creates a question of fact that cannot be resolved by Defendants' present motion for judgment on the pleadings. Accordingly, the motion for judgment on the pleadings on the False Statement in Advertising count must be denied.

### III.  The Defendants' Motion for Partial Judgment on the Pleadings on Count VII (Unlawful Practices) Must be Denied Because the Sale of Jani-King Franchises is "Merchandise" as Defined by M.S.A. §325F.68.

In their memorandum, the Defendants implore this Court to grant their motion for partial judgment on the pleadings on the Consumer Fraud Act's Unlawful Practices (M.S.A. §325F.69) count because the sale "of the right to operate a franchise" does not amount to "the sale of merchandise" as defined in the statute.  (Defendant Jani-King's

Memorandum in Support of its Motion for Partial Judgment on the Pleadings, p. 14.)
The governing statutory provision declares that:

> The act, use, or employment by any person of any fraud, false
> pretense, false promise, misrepresentation, misleading statement
> or deceptive practice, with the intent that other rely thereon in
> connection with the sale of any merchandise, whether or not any
> person has in fact been misled, deceived or damaged thereby is
> enjoinable as provided in section 325F.70.

M.S.A. §325F.69

First and foremost, the sales in question did not involve solely "the right to operate
a franchise" as Defendants would like the Court to believe. A reading of the Complaint,
Agreements and UFOCs, makes clear that the Plaintiffs and prospective class members
also bought a package of goods, including training, services and intangibles, not *solely*
the right to operate a franchise. (Complaint ¶¶ 41(f), 56, 77, 150, 169.) The franchisees'
initial franchise fees and additional monthly fees paid for the right to operate a franchise
as well as additional items entirely ignored by Defendants' memorandum including, but
not limited to, accounting services, advertising services, initial training courses and
manuals, cleaning supplies, cleaning equipment, and Jani-King's name recognition and
goodwill. Perhaps the reason Defendants focused on this singular aspect of the sale (to
the exclusion of all others) becomes more obvious following an examination of the word
"merchandise."

The Complaint's Consumer Fraud Act count is based upon §325F.69 of the
Minnesota Statutes. The immediately preceding statutory section (also part of the
Consumer Fraud Act) defines merchandise as "any objects, wares, goods, commodities,

intangibles, real estate, loans, or services." M.S.A. §325F.68 (emphasis added). The definition of merchandise is defined broadly in order to counteract the seller's disproportionate marketing power. (Emphasis added) *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn.Ct.App. 1997). Because of the remedial nature of consumer fraud actions, courts liberally construe the act in order to protect consumers. *State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 892 (Minn.Ct.App. 1992), *aff'd*, 500 N.W.2d 788 (Minn.1993).

The statute provides a far broader and more encompassing definition than that "definition" offered in Defendants' memorandum in support of their motion. As noted in the previous section, and as previously held by this Court, fact issues not resolvable by a partial judgment on the pleadings arise as a result of an expansively broad statutory definition. *Minnesota ex rel. Hatch v. Fleet Mortg. Corp.*, 158 F.Supp.2d 962, 967 (D.Minn. 2001). Clearly, such issues of fact preclude this Court from granting Defendants' motion; certainly so at this stage of the proceedings.

Additionally, however, it is equally clear that several of the components of the purchase of the franchise package fit squarely within the statutory definition of "merchandise." For example, advertising services and accounting services sold by JKMn to the franchisees are clearly services and within the statute's clear definition of merchandise. Additionally, cleaning supplies and cleaning equipment are unequivocally objects, wares and/or goods as contemplated by the statutory definition and are, therefore, also merchandise. Moreover, the initial training required by Jani-King and required to be purchased by the franchisees from them is

also merchandise because it is a <u>service</u> or <u>intangible</u>. *See Alsides v. Brown Institute, Ltd.*, 592 N.W.2d 468 (Minn. Ct. App. 1999) (training courses are a "service" or "intangible" under the Consumer Fraud Act). It is unassailably clear that, as part of purchasing their franchises, each and every franchisee purchased merchandise as defined by M.S.A. §325F.68.

The Defendants' sole basis for seeking partial judgment of this count is their contention that the transactions at issue are not subject to the Consumer Fraud Act because the purchase of "the right to operate a franchise" is not a sale of merchandise. (Defendant Jani-King's Memorandum in Support of its Motion for Partial Judgment on the Pleadings, p. 14.) Whether that description falls within or without the Defendants' hopeful but narrow definition of the word "merchandise," what plaintiffs purchased from Defendants is far more and easily meets the legal definition of "merchandise" as defined by the Consumer Fraud Act. Because the sales at issue in this case unquestionably involved "merchandise" in the form of accounting services, advertising services, cleaning equipment, cleaning supplies and training, Defendants' request for partial judgment on the pleadings of this count must be denied.

**IV.    Some of the Plaintiffs' False Statement in Advertising and Consumer Fraud Claims May be Time Barred Under Existing Authority.**

The federal courts have routinely held that, for the purposes of pleading, False Statement in Advertising Act and Consumer Fraud Act claims <u>are</u> fraud claims and must, therefore, abide by the heightened pleading standards of the Federal Rules of Civil Procedure Rule 9(b). *Russo v. NCS Pearson, Inc.*, 462 F.Supp.2d 981, 1003 (D.Minn.

2006); *Tuttle v. Lorillard Tobacco Co.*, 118 F.Supp.2d 954, 963 (D.Minn. 2000). It is confounding, however, that several of these same courts have also declared that False Statement in Advertising Act and Consumer Fraud Act claims are not fraud claims for the purposes of determining which statute of limitations period governs, and more importantly, whether the discovery rule applies to those statutory fraud claims.

This incongruous treatment of statutory fraud claims (they are "fraud" for pleading purposes but they are not "fraud" for limitations purposes) works to prevent and frustrate a defrauded plaintiff's ability and right to bring and sustain statutory fraud claims by increasing the hurdles a plaintiff must clear in order to allege the violation in the first place, while also effectively minimizing the limitations period within which the claim may be brought. To support their argument that the limitations period begins to run at the time of the sale of the franchise (rather than at the time of the discovery of the fraud), Defendants cite to *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004), an Eighth Circuit Court case interpreting Minnesota statute of limitations law. The *Tuttle* Court did not rely upon any case decided by a Minnesota state court, but rather relied upon analysis from other District of Minnesota cases (and a District of Kansas case) to interpret how they believed a Minnesota state court would decide the issue. *See Klehr v. A.O. Smith Corp.*, 875 F.Supp. 1342 (D.Minn. 1995); *Veldhuizen v. A.O. Smith Corp.*, 839 F.Supp. 669 (D.Minn. 1993); *AgriStor Leasing v. Meuli*, 634 F.Supp. 1208 (D.Kan. 1986).

None of the cases relied upon by *Tuttle* cite to any Minnesota authority (Minnesota Supreme Court or otherwise) abrogating the general rule that the statute of

24

limitations for fraud claims does not begin to run until the discovery of the facts constituting the fraud. Absent such authority from the Minnesota Supreme Court, the holdings of *Tuttle*, *Klehr* and *Veldhuizen* contain speculative interpretations of Minnesota law at best, and should not be granted full precedential weight.

Each of the eleven franchisees whose claims the Defendants argue are barred by the strict, six-year statute of limitations did not discover the facts constituting the fraud until well after the signing of their franchise agreements. Accordingly, the Defendants' argument that each of these franchisees' False Statement in Advertising Act and Consumer Fraud Act claims accrued as of the signing of their Agreement and are, therefore, time barred, is faulty.

If, however, the Court decides to continue the puzzling practice of treating statutory fraud claims as "fraud" for pleading purposes, but not as "fraud" for discovery and statute of limitations purposes, and if the Court decides to follow the Eighth Circuit's estimation of how a Minnesota court would interpret a Minnesota statute, then Plaintiffs concede that the False Statement in Advertising Act and Consumer Fraud Act claims of the Plaintiffs identified by Defendants in their final argument (Section E) would be barred because each of them purchased their franchise prior to July 14, 2002.

## CONCLUSION

Rather than allow the Plaintiffs' their rightful day in court, the Defendants brought this Motion for Partial Judgment on the Pleadings in an attempt to forestall any litigation of the common law fraud, False Statement in Advertising and Consumer Fraud Act claims brought by Plaintiffs in Counts IV, VII and VIII of the Complaint respectively.

The pleadings allege sufficient facts for the defendants to be on notice of the fraud claims being asserted against them. The allegations in the Complaint fulfill the purpose of Rule 9(b)'s particularity in pleading requirement, and thus the motion for judgment on the pleadings on Count IV must be denied. If the Court should determine that the pleadings require additional facts supporting some of the fraud claims, the Court should grant Plaintiffs the opportunity to amend the Complaint rather than dismissing those fraud claims requiring more specifics. Discovery will close any perceived gaps in the facts surrounding the various fraudulent acts by the Defendants and develop further facts consistent with the allegations and legal theories of the Complaint.

Additionally, in conjunction with the sale of the right to operate a franchise, the Defendants also sold each Plaintiff various goods and services that fit the statutory definition of merchandise. Accordingly, the sole legal argument they make in support of dismissing Count VII fails. Defendants' motion for judgment on the pleadings on Count VII must not be granted.

Moreover, the Complaint clearly identifies an advertisement (the UFOC) and numerous misstatements and omissions made therein. The Complaint sufficiently alleges the circumstance of fraud, thus preventing the Court from granting Defendants motion for judgment on the pleadings of Count VIII.

Finally, the Defendants rely upon the Eighth Circuit's interpretation of unsettled Minnesota law to support their statute of limitations defense to the claims of several plaintiffs. The Court should depart from the perplexing practice of treating statutory fraud claims as "fraud" in some situations, but not as "fraud" in others, and reject the

26

contention that the discovery rule does not apply to the Plaintiffs' Consumer Fraud Act and False Statement in Advertising Act claims.

Therefore, the Plaintiffs respectfully request the Court to issue an Order DENYING IN FULL the Defendants' Motion for Partial Judgment on the Pleadings.

Dated: November 3, 2008

Respectfully submitted,

**FOLEY & MANSFIELD, PLLP**


By: /s/ Thomas W. Pahl
Thomas W. Pahl, Esq. (#243012)
Jamie L. Habeck, Esq. (#308328)
Christopher C. Grecian, Esq. (#0387693)
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401
Tel: (612) 338-8788
Fax: (612) 338-8690
tpahl@foleymansfield.com
jhabeck@foleymansfield.com
cgrecian@foleymansfield.com

**ATTORNEYS FOR PLAINTIFFS**