**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Teng Moua, Juan Martinez, Cheri Martinez, Kua Vang Xiong, Maiku Thao, Cherpao Yang, Bee Vang, Vang Pao Moua, Mailou Xiong Yang, Vangxue Yang, Eng Thao, Choua Moua, Meshack Balira, Ferdinand Nyambarya, VMS Inc., Richard Chang, Lee Wong Chang, Khonekham Dejvongsa, Nouphet Dejvongsa, Diego Cortez Dominguez, Mohamud Egal, Mohamed Osable, Hussein Osable, Ifran Jimale, Layla Jimale, Mohamed Jimale, Paul Bel George, Chue Hang, Tong Thao Hang, Rexhep Krasniqi, Tou Lor, Mai Moua Vue, Arif Metushi, Wa Her Moua, Mee Yang, John Schroeder, Judy Schroeder, Berhane Tesfai, Dual Cykao Thao, Xong Thao Yang, Kou Thao, Yang Xiong, Kevin Vilavong, Chong Xiong, Ko S. Xiong, Blia Yang, Ying Cheng, Chang Yang, Choua Lor, Mai Blia Yang, Pang Yang, Lue Her, for themselves and all other persons similarly situated as franchisees of Jani-King of Minnesota, Inc. and Jani-King International, Inc.,

        Plaintiffs,

        v.

Jani-King of Minnesota, Inc., a Texas Corporation, Jani-King International, Inc., a Texas Corporation, George Selman, a Minnesota resident, and Steve Schmidt, a Minnesota resident,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 08-4942 ADM/JSM

---

Thomas W. Pahl, Esq., Foley & Mansfield, PLLP, Minneapolis, MN, appeared on behalf of Plaintiffs.

Kerry L. Bundy, Esq., and Aaron D. Van Oort, Esq., Faegre & Benson, LLP, Minneapolis, MN, appeared on behalf of Defendants.

---

## I. INTRODUCTION

On November 25, 2008, the undersigned United States District Judge heard oral argument on the above-captioned Plaintiffs' ("Plaintiffs") Motion to Remand [Docket No. 12] and on Defendants' Jani-King of Minnesota, Inc.; Jani-King International, Inc.; George Selman ("Selman"); and Steve Schmidt ("Schmidt") (collectively "Defendants") Motion for Partial Judgment on the Pleadings [Docket No. 27]. For the reasons set forth below, Plaintiffs' motion is denied and Defendants motion is granted.

## II. BACKGROUND[1]

Jani-King International is a Texas corporation that sells franchises to individuals across the United States. Notice of Removal [Docket No. 3], Attach. 2 (Compl.) ¶ 45. These franchises entitle the franchisee to cleaning or janitorial service accounts from Jani-King customers. Id. Jani-King of Minnesota is a Minnesota corporation and a regional business division of Jani-King International authorized to sell franchises to Minnesota residents and to solicit service accounts throughout Minnesota. Id. ¶¶ 31, 46. Selman, a Minnesota resident, is employed as a regional director by Jani-King International, and Schmidt, also a Minnesota resident, is an assistant operations manager for Jani-King International. Id. ¶¶ 34-35. The 52 individuals named in the caption as Plaintiffs, the vast majority of whom are Minnesota residents, purchased Jani-King franchises between 2000 and 2008. Id. ¶¶ 1-29; Grecian Aff. [Docket No. 24] ¶ 30.

At the time of the purchase of a Jani-King franchise, each Plaintiff entered into a franchise agreement setting forth the rights and obligations of the parties. Compl. ¶¶ 46, 51.

---

[1] In considering a motion to remand, "[t]he allegations of the complaint as set forth at the time the petition for removal was filed are controlling." Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir. 1969) (citing Pullman Co. v. Jenkins, 305 U.S. 534, 537-38 (1939)).

Under the agreements, the franchisee pays franchise fees in exchange for business referrals and cleaning and janitorial service accounts. Id. ¶ 55. Plaintiffs allege that when they purchased their respective franchises, they were promised that once they paid all the necessary franchise fees, completed training, and obtained necessary supplies and equipment, they would be provided a certain level of monthly business. Id. ¶ 56. Plaintiffs assert, however, that Jani-King did not have enough cleaning and janitorial accounts to provide the minimum level of monthly business that had been promised each franchisee. Id. ¶ 48. In addition, Plaintiffs allege that (1) many of the accounts offered to Plaintiffs were underbid to the extent that they were not profitable; (2) Plaintiffs were offered accounts that were geographically inconvenient; (3) the same accounts were offered to multiple franchisees who then had to compete against each other for the business; (4) Plaintiffs were required to immediately accept an offered account; and (5) accounts were taken away from Plaintiffs under the manufactured claim that the franchisee's cleaning or janitorial services were not up to standard. Id. ¶¶ 59-60, 64, 66. Plaintiffs assert that such tactics were employed to create the appearance that the obligation to the franchisees of providing a minimum level of monthly business had been satisfied. Id. ¶ 75.

Plaintiffs initiated a class action in state court on July 16, 2008, alleging the activities described above gave rise to claims for breach of contract, breach of implied covenant of good faith and fair dealing, violations of the Minnesota Franchise Act ("MFA"), fraud, unjust enrichment, quantum meruit, violations of the Minnesota Consumer Fraud Act ("MCFA"), and violations of the Minnesota False Statement in Advertising Act ("MFSAA"). Id. ¶¶ 125-83. On August 15, 2008, Defendants filed their Answer [Docket No. 1] and Notice of Removal [Docket No. 3], claiming that jurisdiction in federal court is proper pursuant to the Class Action Fairness

Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

## III.  DISCUSSION

**A.     Motion to Remand**

A case shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ." 28 U.S.C. § 1447(c). The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. See In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993). When considering a motion to remand, a court must resolve all doubts about federal jurisdiction in favor of remand. See id.

**1.     Burden of Proof under CAFA**

CAFA provides that federal courts have jurisdiction over class actions based on state law when (1) there is "minimal" diversity, meaning that at least one plaintiff and one defendant are from different states; (2) the amount in controversy exceeds $5,000,000; and (3) the action involves at least 100 class members. 28 U.S.C. § 1332(d)(2), (5)(B). Here, all three requirements have been met. First, there is minimal diversity as Jani-King International is a citizen of Texas and no plaintiff is a Texas citizen. Second, there are likely in excess of 100 class members given Plaintiffs' representation of 524 potential class members in addition to the 52 identified plaintiffs. Pls.' Mem. in Supp. of Mot. to Remand [Docket No. 17] at 3-4; Grecian Aff. ¶ 31. Lastly, although Plaintiffs initially disputed whether the $5,000,000 amount-in-controversy requirement of CAFA had been met, they conceded at oral argument that the statements in the Supplemental Affidavit of George B. Selman [Docket No. 36] satisfy the amount-in-controversy requirement. Suppl. Aff. of Selman ¶¶ 8-10.

Plaintiffs argue that the Court must decline jurisdiction because this case falls within one of CAFA's exceptions to federal jurisdiction. Although, as noted above, the burden is generally on the party opposing remand to establish federal jurisdiction, there is a "consensus" among the courts that have considered the issue that once CAFA's initial requirements have been satisfied, the burden of proving one of CAFA's exceptions rests with the party asserting the exception. 2 McLaughlin on Class Actions § 12:7, n.17 (3d ed. Dec. 2008 update) (citing Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 804, 813 (5th Cir. 2007); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021-22 (9th Cir. 2007); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680 (7th Cir. 2006); Frazier v. Pioneer Americas, LLC, 455 F.3d 542, 546 (5th Cir. 2006); Evans v. Walter Indus., 449 F.3d 1159, 1164 (11th Cir. 2006)). Given the consensus among the courts[2] and Plaintiffs' acceptance of this burden at oral argument, the party claiming the applicability of the exception bears the burden of proof on that issue.

**2.    Home-State Controversy**

Plaintiffs argue federal jurisdiction is lacking under § 1332(d)(4)(B), the so-called "home-state controversy exception" to federal jurisdiction under CAFA. The home-state controversy exception requires a federal district court to decline jurisdiction over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28

---

[2] One district court has concluded that the burden regarding an exception to CAFA should remain on the removing party. Kearns v. Ford Motor Co., Inc., No. CV 05-5644, 2005 WL 3967998, at *4-5 (C.D. Cal. Nov. 21, 2005). In light of the Ninth Circuit's subsequent decision in Serrano, however, it appears that Kearns has been implicitly overruled. 478 F.3d at 1021-22 (concluding that a district court erred by not placing the burden to prove an exception to CAFA on the party claiming the exception).

U.S.C. § 1332(d)(4)(B). Plaintiffs assert that more than two-thirds of the proposed class members are Minnesota citizens. Pls.' Mem. in Supp. of Mot. to Remand at 9-10; Grecian Aff. ¶¶ 32-39. Defendants do not dispute Plaintiffs' assertion but contend that Jani-King International is a Texas citizen and thus not all of the "primary defendants" are Minnesota citizens.[3] Plaintiffs counter that Jani-King International is not a "primary defendant."

The term "primary defendant" is not expressly defined in CAFA. A Senate Report issued after CAFA's enactment,[4] however, attempted to clarify the meaning of the term:

> [T]he Committee intends that "primary defendants" be interpreted to reach those defendants who are the real "targets" of the lawsuit—i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any

---

[3] As other courts have recognized, the use of the language "the primary defendants" in § 1332(d)(4)(B) rather than "a primary defendant" clearly demonstrates that *all* of the primary defendants must be residents of the state in which the action was originally filed. See Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007); Robinson v. Cheetah Transp., No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006). There is no dispute that the other defendants—Jani-King of Minnesota, Selman, and Schmidt—are "primary defendants" and Minnesota residents.

[4] The Senate Report was issued ten days after CAFA's enactment, which has caused some courts to question its value in discerning legislative intent. See Brook v. UnitedHealth Group Inc., No. 06 CV 12954, 2007 WL 2827808, at *5 (S.D.N.Y. Sep. 27, 2007) (citing Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006)). Courts have nonetheless considered the report in determining the meaning of "primary defendants," and both Plaintiffs and Defendants rely on the report in support of their arguments. See Hangarter v. Paul Revere Life Ins. Co., No. C 05-04558, 2006 WL 213834, at *3 (N.D. Cal. Jan. 26, 2006) (considering the report despite having commented that "[the] report is of dubious value as an interpretative aid"); see also Sorrentino v. ASN Roosevelt Ctr., LLC, ___ F. Supp. 2d ___, 2008 WL 5068821, at *8 (E.D.N.Y. Dec. 1, 2008); Harrington v. Mattel, Inc., No. C07-05110, 2007 WL 4556920, at *5 (N.D. Cal. Dec. 20, 2007); Kendrick v. Standard Fire Ins. Co., No. 06-141-DLB, 2007 WL 1035018, at *5 (E.D. Ky. Mar. 31, 2007); Robinson, 2006 WL 3322580, at *2-3; Frazier v. Pioneer Americas, LLC, No. 05-1338-D-M1, 2006 WL 5670538, at *3-4 (M.D. La. Mar. 23, 2006).

6

> defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

S. Rep. No. 109-14, at 43. The courts that have been asked to ascertain the meaning of "primary defendants" have relied on several potential (and sometimes incongruent) understandings of the term. Brook, 2007 WL 2827808, at *5. Thus, a "primary defendant" has been understood to mean a defendant who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the asserted claims; or (5) is the only defendant named in one particular cause of action. Id. (citing cases).

Plaintiffs argue that Jani-King International is not a primary defendant because it is not named in Count I (breach of contract) and is not a party to the contracts or agreements at issue, which necessarily means that Jani-King International also cannot be a target of Count II (breach of the implied covenant of good faith and fair dealing). Pls.' Mem. in Supp. of Mot. to Remand at 12-13. Furthermore, Plaintiffs contend, to the extent that Jani-King International might be held liable, such a finding would have to be based on "vicarious liability theories for establishing the business model, policies and practices, corporate climate and lack of oversight which its Minnesota-based employees and entities utilized and relied upon in order to repeatedly violate various provisions of the Franchise Agreements, Minnesota state law[,] and common law." Id. at 13. The Court finds Plaintiffs' argument unavailing.

First, the fact that Jani-King International is not named in Count I suggests that Plaintiffs targeted certain claims against only certain defendants. And yet Plaintiffs made no similar distinctions regarding which defendants were the target of their claims of fraud, unjust

enrichment, quantum meruit, and violations of the MCFA, and MFSAA. Thus, on the face of the Complaint, it appears that Jani-King International is alleged to be directly liable in a significant number of the asserted claims. Second, the allegations and arguments in Plaintiffs' other submissions to the Court belie Plaintiffs' insistence now that Jani-King International's potential liability is based solely on theories of vicarious liability. On several occasions, Plaintiffs group all Defendants together in levying allegations. For example, in their brief opposing the motion for judgment on the pleadings, Plaintiffs asserted theme throughout the Complaint is the promise of a specific amount of cleaning business per month but that Jani-King of Minnesota, Selman, Schmidt, and Jani-King International "knew it [sic] could not fulfill" that promise. Pls.' Mem. in Opp. to Mot. for Partial J. on the Pleadings [Docket No. 31] at 11. In another instance, Plaintiffs allege that Jani-King of Minnesota, Jani-King International, Selman, and Schmidt "engaged in fraud related to the misrepresentations and omissions regarding Defendants' ability to fulfill its contractually obligated duties to each Plaintiff." Id. at 12-13. Most significantly, Plaintiffs explicitly and directly accuse Jani-King International of wrongdoing for "instruct[ing] and direct[ing] many of the affairs and operations of [Jani-King of Minnesota]." Id. at 12.

In Adams v. Federal Materials Co., Inc., the court concluded that there was no basis for treating a defendant as secondary because no "principled distinction" existed between that defendant's status and another defendant's status given the fact that one count of the complaint was explicitly directed against both defendants. No. Civ. A. 5:05CV-90-R, 2005 WL 1862378, at *5 (W.D. Ky. July 28, 2005); see also Brook, 2007 WL 2827808, at *6 (concluding that deciding the "definitive meaning of the term 'primary defendants'" was unnecessary because, in light of the plaintiffs' concession that there was no distinction between the culpability and

8

liability of the various defendants, there was no "rational[] basis upon which to differentiate the defendants' status as being primary or secondary"). Here too, the face of the Complaint provides no principled reason for finding, on the one hand, that Jani-King of Minnesota, Selman, and Schmidt are "primary defendants" but, on the other hand, that Jani-King International is not. As such, Plaintiffs have failed to satisfy their burden of proving the home-state controversy exception, and, therefore, federal jurisdiction is proper.[5]

**B.      Motion for Judgment on the Pleadings**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants move for judgment on the pleadings with respect to Plaintiffs' claims of fraud/misrepresentation (Count IV), violations of the MCFA (Count VII), and violations of the MFSAA (Count VIII). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.

---

[5] In addition to the exceptions under CAFA that *require* a district court to decline federal jurisdiction, a district court also has *discretion* to decline federal jurisdiction in certain cases. See 28 U.S.C. § 1332(d)(3). Plaintiffs have not argued for the application of this provision and, in any event, it appears that it would not apply because, like the home-state controversy exception, § 1332(d)(3) requires that "the primary defendants" be citizens of the state in which the action was originally filed.

Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

      **1.**    **Count IV—Common Law Fraud**

Count IV asserts a claim of common law fraud by misrepresentation. Compl. ¶¶ 145-53. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Eighth Circuit has explained:

> "Circumstances" includes such matters as time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.

Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995). "Put another way, the complaint must identify the who, what, where, when, and how of the alleged fraud." United States v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (quotation omitted). However, a complaint need not be filled with precise detail in order to satisfy Rule 9(b) since one of the main purposes of the rule is to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud." Commercial Prop., 61 F.3d at 644. Thus, Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the "core" factual basis for the

fraud claims.  Id. at 646.

In alleging the factual basis for their claims, Plaintiffs' Complaint begins by reciting a description of the general types of alleged wrongful conduct by Defendants.  Compl. ¶¶ 45-75.  Following that section, the Complaint provides allegations specific to eleven of the named Plaintiffs.  Id. ¶¶ 76-123.  Lastly, the Complaint then alleges that the remaining 41 named Plaintiffs have "experienced many of the same or similar wrongs and unlawful conduct" described in both the general and specific allegations directed to the eleven Plaintiffs.  Id. ¶ 124.

As an initial matter, Defendants argue that because the Complaint contains allegations of fraud specific to only eleven Plaintiffs, it fails to plead fraud with particularity as to the other 41 Plaintiffs.  Defs.' Mem. in Supp. of Mot. for Partial J. on Pleadings [Docket No. 39] at 6.  Essentially, Defendants' position is that in a class action asserting claims of fraud, Rule 9(b) requires that the Complaint set forth allegations stating the particularities of the fact pattern supporting each class member's claim.  The Court disagrees with such a rhadamanthine application of Rule 9(b) and instead adopts the view that "where the complaint presents the claims of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings, less specificity is required."  Charleswell v. Chase Manhattan Bank, N.A., 308 F. Supp. 2d 545, 571 (D.V.I. 2004) (quotation omitted); see also Alfaro v. E.F. Hutton & Co., Inc., 606 F. Supp. 1100, 1107-10 (E.D. Pa. 1985) (same).[6]  Here,

---

[6] Another district court in this circuit has declined the invitation to follow the reasoning of Alfaro.  See Gunderson v. ADM Investor Servs., Inc., Nos. C. 96-3148, C 96-3151, 1997 WL 57070453, at *9, n.6 (N.D. Iowa Apr. 17, 1997).  But even the Gunderson court recognized that "logic dictates that the sufficiency of a pleading under Rule 9(b) varies with the complexity of the transaction," and, accordingly, certain cases might warrant "less stringent[]" application of the rule.  1997 WL 57070453, at *9.  In this regard, "Rule 9(b)'s particularity requirement for fraud should not be applied with such draconian strictness as to undermine the liberal spirit of the Federal Rules of Civil Procedure."  Id.

11

the Complaint, which exceeds 50 pages and 180 numbered paragraphs, pleads the individual circumstances of the alleged fraud as to eleven of the class members. Requiring Plaintiffs to plead the individual circumstances of the remaining 41 named Plaintiffs would unreasonably expand an already lengthy Complaint. It is unlikely that additional allegations setting forth the exact particulars of every individual instance of fraud is necessary to provide Defendants a fair opportunity to respond and prepare a defense to the fraud claims. See Commercial Prop., 61 F.3d at 644.

Defendants, however, are correct that Plaintiffs' fraud claims fail to satisfy Rule 9(b) because the allegations cluster all the Defendants together without the required specificity to discern the respective roles of the individual defendants in the alleged fraud scheme. Defs.' Mem. in Supp. of Mot. for Partial J. on Pleadings at 7. Throughout the Complaint, Plaintiffs generically accuse "Defendants" and "Jani-King" of misrepresentations but never specify which Defendant (or which Jani-King entity) is responsible for which alleged misrepresentations. For example, the Complaint contains the following allegations: (1) "*Defendants* . . . misrepresented that Jani-King has sufficient business to provide the guaranteed monthly income promised . . . pursuant to [the] Franchise Agreements"; (2) "*Defendants* further misrepresented that Plaintiffs and other class members would receive cleaning accounts that are properly bid so as to not require an inordinate and unfair number of hours of work than the income generated from those accounts"; and (3) "*Defendants* represented . . . Plaintiffs would have an opportunity to cure any flaws in their cleaning within a certain time period, but instead, . . . would . . . remove [an] account . . . without giving [Plaintiffs] the promised opportunity to cure." Compl. ¶¶ 47, 49, 149 (emphasis added). Rule 9(b) is not satisfied when the complaint "vaguely attributes the alleged fraudulent statements to 'defendants.'" Mills v. Polar Molecula Corp., 12 F.3d 1170, 1175 (2d

12

Cir. 1993); see also Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (holding that a complaint that "lumps all the defendants together and does not specify who was involved in what [fraudulent] activity" fails to satisfy Rule 9(b)).  Rather, when a complaint "accuses multiple defendants of participating in the scheme to defraud, the plaintiff must take care to identify which of them was responsible for the individual acts of fraud."  Weimer v. Int'l Flavors & Fragrances, Inc., 20 F.R.D. 431, 437 (N.D. Iowa 2007).  If the requirements of Rule 9(b) were otherwise, a defendant would be forced to "guess which allegations in the complaint were pleaded against it, rendering it difficult (if not impossible) to adequately frame a response," which is "precisely the problem that Rule 9(b) was designed to remedy."  Carlson v. A.L.S. Enterprises, Inc., Civ. No. 07-3970, 2008 WL 185710, at *4 (D. Minn. Jan. 18, 2008).

Because the Complaint does not identify which Defendant was responsible for the particular misrepresentations, Plaintiffs' fraud claims are not particular as to the "who" requirement of pleading fraud.   Therefore, Count IV is dismissed.  The dismissal is without prejudice, and Plaintiffs are permitted to file an amended complaint correcting the deficiencies. See 2 James Wm. Moore et al., Moore's Federal Practice, § 9.03[4] (3d ed. 2007) (commenting that a first dismissal for failing to satisfy Rule 9(b) should be without prejudice to re-pleading).

    **2.**    **Count VII—False Statements in Advertising**

Count VIII of the Complaint asserts claims for violations of the MSFAA, which prohibits the following conduct:

> Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered . . . to the public, for sale or distribution, . . . makes, publishes, disseminates, circulates, or places before the public . . . an advertisement of any sort . . ., which . . . contains any material assertion, representation, or statement of fact which is untrue, deceptive or misleading."

13

Minn. Stat. § 325F.67. Defendants assert that the MSFAA claims sound in fraud and, as such, are subject to the pleading with particularity requirement of Rule 9(b). See Russo v. NCS Pearson, Inc., 462 F. Supp. 2d 981, 1003 (D. Minn. 2006) (concluding that statutory fraud claims made under Minnesota law, such as the MSFAA, are subject to Rule 9(b)'s requirement of pleading with particularity). Defendants argue that the claims have not been pled with particularity because "the Complaint does not identify a single untrue or misleading advertisement placed before the public by [Defendants]." Defs.' Mem. in Supp. of Mot. for Partial J. on Pleadings at 12. In response, Plaintiffs argue that the Complaint identifies the Uniform Franchise Offering Circular ("UFOC"), a "public offering statement" required by law to be filed with the Minnesota Department of Commerce, as the "public advertisement" that satisfies this MSFAA requirement. Pls.' Mem. in Opp'n to Mot. for Partial J. on the Pleadings at 19. Defendants respond that even if the UFOC is the basis for the MSFAA claims, the UFOC is never explicitly mentioned in Count VII, the Complaint fails to identify the specific provisions of the UFOC that constitute the misrepresentations, and the Complaint fails to specify which Defendant or Defendants are responsible for the misrepresentations in the UFOC. Defs.' Reply Mem. in Supp. of Mot. for Partial J. on Pleadings [Docket No. 39] at 9-11.

Given that the UFOC is the only document that could constitute a public advertisement and that Plaintiffs have confirmed on the record that the UFOC is the public advertisement on which the MSFAA claims are based, the failure to explicitly refer to the UFOC in Count VII is inconsequential. Defendants are now clearly on notice that the UFOC forms the basis of the MSFAA claims. The Court agrees with Defendants, however, that, like the common law fraud claims, Rule 9(b)'s pleading requirement is not met because the Complaint fails to specify the

Defendant or Defendants responsible for the misrepresentations in the UFOC. Further, the failure to identify the specific provisions of the lengthy UFOC is equally problematic. Although it is true, as Plaintiffs argue, that one cannot point to a specific provision to identify a misrepresentation by omission, Plaintiffs have alleged affirmative misrepresentations in the UFOC, and, as to these allegations, they should be required to specifically identify the source of those misrepresentations in the UFOC. Accordingly, Count VII is dismissed for failure to plead with particularity, but the dismissal is without prejudice, and Plaintiffs are permitted to file an amended complaint correcting these deficiencies.

### 3.     Count VIII—Consumer Fraud

Count VIII asserts claims for violations of the MCFA, Minn. Stat. §§ 325F.68-.70, which prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon *in connection with the sale of any merchandise*." Minn. Stat. § 325F.69 (emphasis added). Defendants argue that the MCFA claims fail as a matter of law because Plaintiffs have alleged misrepresentations in connection with the sale of a franchise, not any misrepresentations connected to the sale of merchandise.

The Minnesota Court of Appeals has held that the MCFA "does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale of merchandise." Banbury v. Omnitrition Int'l, Inc., 533 N.W.2d 876, 882 (Minn. Ct. App. 1995). In Banbury, the court affirmed summary judgment on the ground that the misrepresentations that formed the basis of the MCFA claim were allegedly made in connection with the establishment and later termination of a distributorship relationship and not in connection with the sale of merchandise. Id. In so holding, the Banbury court relied on

Cooperman v. R.G. Barry Corp., which concluded that a claim under the MCFA requires a "nexus between the fraud alleged and the sale of merchandise." 775 F. Supp. 1211, 1213 (D. Minn. 1991).

Plaintiffs argue that the sales at issue here were not solely sales of the right to operate franchises but also included sales of "accounting services, initial training courses and manuals, cleaning supplies, cleaning equipment, and Jani-King's name recognition and goodwill." Pls.' Mem. in Opp'n to Mot. for Partial J. on the Pleadings at 21. They contend these aspects of the sales "fit squarely within the statutory definition of 'merchandise.'" Id. The critical issue is not, however, whether the sale involved aspects that can be viewed as constituting "merchandise," but rather whether there is a "nexus" between the alleged misrepresentations and that "merchandise." Even if accounting services, training courses, and cleaning supplies constitute "merchandise," the Complaint is entirely devoid of any allegations that Defendants misrepresented the nature or quality of those accounting services, training courses, or cleaning supplies. Instead, the alleged misrepresentations all relate to the sale of the right to operate franchises and the rights and obligations of the parties in the franchise relationship. Accordingly, there are no allegations that would support a claim under the MCFA, and, as such, judgment in favor of Defendants on Count VIII is appropriate.

4.     **Statute of Limitations**

Lastly, Defendants argue that the MSFAA claims of eleven of the Plaintiffs are barred by the six-year statute of limitations applicable to such claims.[7] Defendants argue the limitations period began at the time Plaintiffs purchased their franchises and that because the eleven Plaintiffs purchased their franchises more than six years prior to the filing of this class action on July 14, 2008, their MSFAA claims based on those purchases are time barred. In support of this argument, Defendants cite Tuttle v. Lorillard Tobacco Co., 377 F.3d 917 (8th Cir. 2004). In Tuttle, the Eighth Circuit held that claims based on violations of the MSFAA are governed by the six-year statute of limitations in Minn. Stat. § 541.05, subd. 1(2), which does not include a "discovery allowance" similar to that allowed in the statute of limitations applicable to common-law fraud claims. Id. at 926. Thus, the statute of limitations for claims under the MSFAA begins to run on the date of sale, not when the alleged fraudulent conduct is discovered. See id.

In response, Plaintiffs argue that Tuttle was wrongly decided. They contend that it is "incongruous" to treat claims under the MSFAA similarly to common law fraud claims for purposes of the particularity requirement of Rule 9(b), while at the same time decline to recognize a "discovery allowance" accorded to common law fraud claims. Pls.' Mem. in Opp'n to Mot. for Partial J. on the Pleadings at 24. Though this argument regarding the incongruous treatment of MSFAA claims under existing law is not entirely without merit, this Court will follow binding Eighth Circuit precedent. The MSFAA claims arising from the purchases of Jani-

---

[7] As noted in the previous section, supra Part III.B.3, judgment on the pleadings is granted on all of the claims based on the MCFA on the ground that the Complaint fails to allege misrepresentation in connection with the sale of merchandise, which is necessary to support such claims. Accordingly, the Court need not consider Defendants' argument that MCFA claims of the eleven particular Plaintiffs are also untimely.

King franchises prior to July 14, 2002—specifically, the purchases by Mailou Yang[8]; Meshack Balira and Ferdinand Nyambarya; Mohamud Egal, Mohamed Osable, Hussein Osable, Ifran Jimale, Layla Jimale, and Mohamed Jimale; Berhane Tesfai; and Chong Xiong—are not timely under the statute of limitations applicable to such claims. Therefore, Defendants are entitled to judgment on the pleadings on these claims.

### IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that

1. Plaintiffs' Motion to Remand [Docket No. 12] is **DENIED**;

2. Defendants' Motion for Partial Judgment on the Pleadings [Docket No. 27] is **GRANTED**;

3. Counts IV and VII are **DISMISSED WITHOUT PREJUDICE**;

4. Count VIII is **DISMISSED WITH PREJUDICE**;

5. The MSFAA claims arising from the purchase of franchises that occurred prior to July 14, 2002, are **DISMISSED WITH PREJUDICE**.

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 27, 2009.

---

[8] The Complaint alleges that Mailou Yang purchased franchises in 2000, 2002, and 2005. Compl. ¶ 6. Defendants direct their statute of limitations argument only with regard to the purchase in 2000. Defs.' Mem. in Supp. of Mot. for Partial J. on Pleadings at 16. Thus, the dismissal of the Mailou Yang's MSFAA claim extends only to such a claim based on the purchase of a franchise in 2000.