# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Teng Moua, Juan Martinez, Cheri Martinez, Kua
Vang Xiong, Maiku Thao, Cherpao Yang, Bee
Vang, Vang Pao Moua, Mailou Xiong Yang,
Vangxue Yang, Eng Thao, Choua Moua, Meshack
Balira, Ferdinand Nyambarya, VMS Inc., Richard
Chang, Lee Wong Chang, Khonekham Dejvongsa,
Nouphet Dejvongsa, Diego Cortez Dominguez,
Mohamud Egal, Mohamed Osable, Hussein Osable,
Ifran Jimale, Layla Jimale, Mohamed Jimale, Paul
Bel George, Chue Hang, Tong Thao Hang, Rexhep
Krasniqi, Tou Lor, Mai Moua Vue, Arif Metushi,
Wa Her Moua, Mee Yang, John Schroeder, Judy
Schroeder, Berhane Tesfai, Dual Cykao Thao,
Xong Thao Yang, Kou Thao, Yang Xiong, Kevin
Vilavong, Chong Xiong, Ko S. Xiong, Blia Yang,
Ying Cheng, Chang Yang, Choua Lor, Mai Blia
Yang, Pang Yang, Lue Her, for themselves and all
other persons similarly situated as franchisees of
Jani-King of Minnesota, Inc. and Jani-King
International, Inc.,

|  |  |
|---|---|
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | Civil No. 08-4942 ADM/JSM |

Jani-King of Minnesota, Inc., a Texas Corporation,
Jani-King International, Inc., a Texas Corporation,
George Selman, a Minnesota resident, and Steve
Schmidt, a Minnesota resident,

Defendants.

---

Thomas W. Pahl, Esq., Michael W. Haag, Esq., Jamie L. Habeck, Esq., and Christopher C.
Grecian, Esq., Foley & Mansfield, PLLP, Minneapolis, MN, on behalf of Plaintiffs.

Kerry L. Bundy, Esq., Aaron D. Van Oort, Esq., William L. Killion, Esq., and Eileen M. Hunter,
Esq., Faegre & Benson, LLP, Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On January 7, 2010, the undersigned United States District Judge heard oral argument on the above-captioned Plaintiffs' ("Plaintiffs") Motion for Class Certification [Docket No. 74].  In their Amended Complaint [Docket No. 54], Plaintiffs, on behalf of themselves and all other individuals similarly situated, allege claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the Minnesota Franchise Act, fraudulent misrepresentation, unjust enrichment, quantum meruit, and violations of the Minnesota False Statement in Advertising Act.  For the reasons set forth below, Plaintiffs' Motion is denied.

## II. BACKGROUND

Defendant Jani-King International ("Jani-King International") and its regional business division, Defendant Jani-King of Minnesota ("Jani-King of Minnesota") (collectively "Jani-King"), sell commercial cleaning franchises to individuals.  January 27, 2009 Order [Docket No. 48] at 2.  Defendant George Selman ("Selman") is a Jani-King International regional director, and Defendant Steve Schmidt ("Schmidt") is a Jani-King International assistant operations manager.  Id.  Plaintiffs are individuals who purchased a Jani-King franchise between January 1, 2000, and June 30, 2008, and entered into franchise agreements with Jani-King of Minnesota.  Am. Compl. ¶¶ 38, 41, 46.

Plaintiffs allege they were promised that after they paid the necessary franchise fees, completed training, and obtained necessary supplies and equipment, they would be provided a certain amount of monthly business.  See generally id. ¶¶ 49- 61; January 27, 2009 Order at 3.  Plaintiffs claim, however, that Jani-King did not have sufficient cleaning and janitorial accounts to provide the minimum amount of monthly business promised each franchisee and that Jani-

King and its representatives knew the promised amount was unattainable.  Am. Compl. ¶¶ 49-50.
In addition, Plaintiffs allege that (1) many of the accounts offered to them were underbid to the
extent that they were not profitable; (2) they were offered accounts that were prohibitively
inconvenient in their geographic locations; (3) the same accounts were offered to multiple
franchisees who then had to compete against each other for the business; (4) they were required
to immediately accept an account when it was offered; and (5) accounts were taken away from
them under the manufactured claim that the franchisee's cleaning or janitorial services were not
up to standard.  Id. ¶¶ 51-52, 62-73.  Plaintiffs claim Jani-King used these tactics to create the
appearance of satisfying its obligation of providing a minimum amount of monthly business to
franchisees.[1]  January 27, 2009 Order at 3.

Plaintiffs initiated this putative class action on July 16, 2008.  In February 2009,
Plaintiffs filed their Amended Complaint to plead their common law fraud claims and their claim
for false advertising with sufficient particularity.  Plaintiffs now move the Court to certify this
case as a class action.

### III. DISCUSSION

**A.      Class Certification Standard**

Plaintiffs seek certification of the following class: "All person or entities who purchased
a Jani-King cleaning franchise within in [sic] the State of Minnesota at any time between

---

[1] Defendants argue that Plaintiffs mischaracterize the franchise agreements when they
claim that they were promised a minimum amount of monthly business.  According to
Defendants, the franchise agreements require only that Jani-King "offer a franchisee 'the
opportunity to provide service'" on accounts that have a specified miniumum of "'cumulative
gross monthly billings.'" Defs.' Opp'n to Mot. for Class Cert. [Docket No. 83] at 11 n.4.
Defendants concede, however, that this disagreement does not affect the analysis of whether
class certification is appropriate.  Id.

January 1, 2000 and June 30, 2008." Pls.' Mem. in Supp. of Mot. for Class Cert. [Docket No. 81] at 3. For class certification to be appropriate, a plaintiff must first establish the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Class certification is proper when (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the class (adequacy). Id. Upon satisfying the four requirements of Rule 23(a), a party seeking class certification must also demonstrate that the action falls within one of the three categories of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(a); In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005). Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which permits a class action to be maintained if two requirements are met: "Common questions of law or fact must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)).

Plaintiffs bear the burden of proving both the threshold requirements of Rule 23(a) and the requirements of Rule 23(b)(3). See Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). When considering a motion for class certification, the court takes the substantive allegations in the plaintiff's complaint as true, as the issue is resolved, not by an investigation into the merits of the claim, but rather by consideration of the class certification criteria. Thompson v. Am. Tobacco Co., 189 F.R.D. 544, 549 (D. Minn. 1999); Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995). Nonetheless, a motion for class certification

"generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 469 (1978) (citation omitted). Only after a rigorous analysis of the proposed class and the requirements of Rule 23 may a court grant class certification. <u>See</u> <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982). Furthermore, a district court retains discretion in the decision to certify a class. <u>See</u> <u>St. Jude Med. Inc.</u>, 425 F.3d at 1119.

Defendants' principal argument is that Plaintiffs cannot satisfy the predominance and superiority requirements of Rule 23(b)(3).[2] Accordingly, Rule 23(b)(3) will be addressed first. And because Plaintiffs have not met their burden of showing that common questions predominate, which is fatal to class certification under Rule 23(b)(3), the Court does not address the threshold requirements of Rule 23(a) or the Rule 23(b)(3) requirement of superiority. <u>See</u> <u>Steering Committee v. Exxon Mobil Corp.</u>, 461 F.3d 598, 601, 604 (5th Cir. 2006) (declining to address the threshold requirements under Rule 23(a) and the superiority requirement of Rule 23(b)(3) when predominance had not been demonstrated); <u>see also</u> <u>Clayton v. Batesville Casket Co., Inc.</u>, No. 5:07CV00214, 2009 WL 2448164, at *2 (E.D. Ark. Aug. 10, 2009) (holding that because the analysis under Rule 23(b)(3) was "determinative," no discussion of the requirements under Rule 23(a) was necessary).

**B.     Rule 23(b)(3) Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 521 U.S. at 623. In examining

---

[2] Defendants also argue, with the exception of numerosity, that Plaintiffs have not met their burden of showing the initial requirements under Rule 23(a) for class certification.

this requirement, the Court is to "conduct a limited preliminary inquiry, looking behind the

pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs general

allegations are true, common evidence could suffice to make out a prima facie case for the

class." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005) (internal citation omitted).

"This necessarily requires an examination of the underlying elements necessary to establish

liability for plaintiffs' claims," and the predominance standard is satisfied only if those elements

"can be proven on a systematic, class-wide basis." Id. at 569 (citations omitted).

### 1.       Breach of Contract

Plaintiffs assert a breach of contract claim against Jani-King of Minnesota.  In

Minnesota, a claim for breach of contract requires a plaintiff to show: (1) a valid contract; (2)

performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by

the defendant; and (4) damages. Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961

(D. Minn. 2000); Briggs Trans. Co. v. Ranzenberger, 217 N.W.2d 198, 200 (Minn. 1974).

Plaintiffs assert the franchise agreements entered into by each franchisee in the proposed

class "are nearly identical (if not entirely identical) in all material respects." Pls.' Reply Mem. in

Supp. of Mot. for Class Cert. [Docket No. 99] at 17.  "Because the terms and conditions of the

Franchise Agreements are uniform," Plaintiffs maintain, a determination that "Jani-King's

centralized business practices" breached the franchise agreement of one franchisee is effectively

a determination that the practices breached the franchise agreements of all franchisees. Id.

A district court in Massachusetts recently considered a motion for class certification in a

very similar action by Jani-King franchisees against Jani-King. See De Giovanni v. Jani-King

International, Inc., 262 F.R.D. 71 (D. Mass. 2009).  In analyzing whether to certify for class

treatment claims that Jani-King breached its contractual obligation to provide a minimum amount of monthly business, the court in De Giovanni aptly recognized that demonstrating the terms of the franchise agreement were the same for all of the putative class members is "only half of the battle." Id. at 77. Although Plaintiffs assert that the conduct that breached the operative provisions of the franchise agreement—the alleged tactics Jani-King used to offer accounts to franchisees and to justify taking accounts away from franchisees—was "employed consistently across the class," individual testimony from each class member will be required to prove that Jani-King used those tactics against him or her. In addition, individualized proof will be needed to show how those tactics prevented each class member from realizing the minimum amount of monthly business that had allegedly been promised. Presumably, Defendants will present contrary evidence and will challenge the credibility of the evidence offered by the class members in support of their claims, requiring numerous mini-trials.

In sum, resolution of the class members' breach of contract claims will require individualized inquiries that will overwhelm common questions. Plaintiffs have failed to carry their burden of proving the predominance requirement of Rule 23(b)(3), and class certification of the breach of contract claims is denied.

### 2. Good Faith and Fair Dealing

Plaintiffs assert that Jani-King of Minnesota also breached the implied covenant of good faith and fair dealing. Under Minnesota law, all contracts, except sales and employment contracts, include an implied covenant of good faith and fair dealing "requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin County 1986 Recycling Bond Litigation, 504 N.W.2d 494, 502 (Minn.1995); see also Minnwest Bank

<u>Central v. Flagship Properties LLC</u>, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004).  "To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty."  <u>Minnwest</u>, 689 N.W.2d at 303.

Plaintiffs allege that Jani-King of Minnesota breached the implied covenant of good faith and fair dealing by (1) offering accounts to franchisees when Jani-King of Minnesota knew the franchisees could not accept the offered account because it required the work be performed at a certain time of day, (2) fabricating customer complaints to justify taking accounts away from franchisees, (3) offering accounts to multiple franchisees so the accounts could be simultaneously counted against multiple franchisees, and (4) underbidding accounts.  Am. Compl. ¶ 146.  Defendants argue that whether and to what extent the alleged conduct was used against class members will require individualized proof from each class member.

The Court finds individual issues will predominate over common ones.  For example, proving that Jani-King of Minnesota knew a class member would be unable to accept an account because it required the work be performed at a particular time of day will necessitate evidence specific to that individual class member regarding the times he or she was unavailable and whether Jani-King of Minnesota had knowledge of those limitations.  Similarly, proving Jani-King of Minnesota fabricated customer complaints requires individualized evidence from each class member regarding the specific fabrications made and to which accounts they related.  The allegation of simultaneously offering an account to multiple franchisees and then counting that account against each franchisee to which it was offered even though only one ultimately received the account is also factually independent.  Underbidding accounts is the allegation most

susceptible of common proof because it was allegedly the product of a common practice by Jani-King.  But proving that an account was so underbid as to amount to a breach of good faith and fair dealing will require individualized evidence of the revenue from that account, as well as the fair amount of time and expenses a class member would have to incur to perform work on the account.

Because resolution of Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing will be mired in individualized inquiries, the predominance requirement of Rule 23(b)(3) has not been met and class treatment is not warranted.

### 3.       Fraud-Based Claims

In replying to Defendants' opposition brief to the motion to certify, Plaintiffs refer to the rest of their claims—those under the Minnesota Franchise Act ("MFA"), Minn. Stat. §§ 80C.01-.30, and the Minnesota False Statement in Advertising Act ("MFSAA"), Minn. Stat. § 325F.67, and their claims of fraudulent misrepresentation, unjust enrichment, and quantum meruit—as being fraud based, and Plaintiffs address the issue of predominance as it relates to those claims in one section.  See Pls.' Rep. in Supp. of Mot. for Class Cert. at 20-21.  The Amended Complaint confirms that the claims are similar in that they sound in fraud and are based on alleged untrue statements of material fact, misrepresentations, material omissions, and other deceptive conduct.  See Am. Compl. ¶¶ 156-160, 163-169, 171-176, 180-182, 185-190.

To prove their claims for fraudulent misrepresentation and for violations of the MFA and the MFSAA, Plaintiffs must prove, among other elements, that they relied on the alleged false statements, misrepresentations, omissions, or deceptive conduct.  See Trustees of the Twin Cities Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 331 (8th Cir.

2006) (stating that under Minnesota law, claims for fraudulent misrepresentation require proof of justifiable reliance); Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 13 (Minn. 2001) (holding that reliance is required in a private cause of action brought under the Private Attorney General Statute, Minn. Stat. § 8.31, subd. 3a, alleging misrepresentations or deceptive conduct in violation of the MFSAA because "as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes"); Randall v. Lady of Am. Franchise Corp., 532 F. Supp. 2d 1071, 1086 (D. Minn. 2007) ("Of course, some kind of reliance—reasonable or unreasonable—is required [in a claim for misrepresentation under the MFA], because a franchisee can only recover for damages that are caused by a franchisor's violation of the [MFA].").

The Court recognizes the Eighth Circuit has cautioned that "[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment." In re St. Jude Med., Inc., 522 F.3d 836, 838 (8th Cir. 2008) ("St. Jude II").  The court in St. Jude II found the issues of receipt and reliance on alleged misrepresentations to be particularly problematic to class treatment of fraud-based claims under Minnesota's consumer protection laws, including the MFSAA.  Id.  Here, as in St. Jude II, proving that class members both received and relied on the alleged false statements, misrepresentations, and omissions will required individualized inquiries regarding each class member.  Most of the named class members claim they relied on false statements, misrepresentations, and omissions allegedly in the Uniform Franchise Offering Circular, as well as on fraudulent conduct that allegedly occurred in one-to-one conversations with identified Jani-King employees, such as Selman or

10

Schmidt.  See, e.g., Am. Compl. ¶¶ 81, 90, 100, 117, 122.  Proving the alleged fraudulent

conduct in these one-to-one interactions will be highly specific to the variable circumstances

surrounding each class members' interaction with Jani-King representatives.  Proving reliance by

a class member on the alleged conduct in this case is also an individual rather than a collective

exercise.  Conceding Plaintiffs may be able to show through common proof—the Uniform

Franchise Offering Circular—that all the class members were exposed to some of the same

alleged misrepresentations and omissions, the task of proving reliance still requires "delving into

the decisionmaking of each individual franchisee."  De Giovanni, 262 F.R.D. at 79-80.[3]

     In St. Jude II, the court held that although the Minnesota Supreme Court seemingly

"relaxed" the reliance requirement for fraud claims brought under Minnesota's consumer

protection laws, it did not "eliminate the right of a defendant to present evidence negating a

plaintiff's direct or circumstantial showing of causation and reliance."  522 F.3d at 840 (citing

---

[3] The unsuitability of class treatment of Plaintiffs' fraud-based claims is illustrated by how this case differs from a case that this Court permitted to proceed a class action.  See Mooney v. Allianz Life Ins. Co. of N. Am., Civil No. 06-545, 2009 WL 511572 (D. Minn. Feb. 26, 2009).  In Mooney, a class of plaintiffs brought an action under the Private Attorney General Statute, alleging that the defendant made misrepresentations and engaged in deceptive conduct in the marketing of certain annuity products, in violation of Minnesota's consumer protection laws.  Id. at *1.  Critical to the Court's conclusion that the predominance requirement of Rule 23(b)(3) had been met was evidence showing that receipt and reliance or causation could be shown by common proof.  See id. at *5-6.  Evidence was presented that all the class members were shown brochures containing essentially the same alleged misrepresentations.  Id. at *6.  Although some class members also relied on statements by sales agents, documentary evidence supported a determination that any statements made by sales agents were uniform, and, thus, "class members would have been exposed to the same alleged misrepresentation when the agent presented misrepresentation from the brochure."  Id.  Here, as in Mooney, there appears to be uniformity in the documents upon which some of the alleged false statements and misrepresentations are based.  But unlike in Mooney, there has been no showing of uniformity in the oral statements to satisfy the Court that Plaintiffs will be able to prove the misrepresentations or deceptive conduct allegedly present in those statements through common evidence.

Group Health, 621 N.W.2d at 13-14).  Defendants maintain that there are variations in the

experiences that class members had in their interactions with Jani-King and its employees, and

they cite evidence in the record relevant to the issue of numerous class members' reliance or

causation, or claimed lack thereof.  See Defs.' Opp'n to Mot. for Class Cert. at 19-25.  Clearly,

"resolution of [Jani-King's] potential liability to each plaintiff . . . will be dominated by

individual issues of causation and reliance," and "[t]he need for such plaintiff-by-plaintiff

determinations means that common issues will not predominate the inquiry into [Jani-King's]

liability."  St. Jude II, 522 F.3d at 840.

Plaintiffs have failed to sustain the burden of showing that common issues will

predominate over individual ones with regard to the fraud claims under the common law, the

MFA, and MFSAA.  Accordingly, the class certification of those claims under Rule 23(b)(3) is

denied.[4]

_____

[4] Unjust enrichment is a theory of relief that may be premised on a failure of
consideration, fraud, mistake, or other situations where it would be morally wrong for one party
to enrich himself at the expense of another.  Cady v. Bush, 166 N.W.2d 358, 361-62 (Minn.
1969).  "Quantum meruit is a measure of remedy and does not arise absent a showing of unjust
enrichment."  Conus Commc'ns Co. Ltd P'ship v. Hubbell, No. C5-99-2131, 2000 WL 979133,
at *2 n.1 (Minn. Ct. App. July 18, 2000) (citing Stemmer v. Estate of Sarazin, 362 N.W.2d 406,
408 (Minn. Ct. App. 1985)).  Here, Plaintiffs premise their unjust enrichment and quantum
meruit claims on the alleged fraudulent conduct that forms the basis of their common law fraud
claim and their claims under the MFA and the MFSAA.  Because those fraud-based claims are
not suitable for class treatment, so too are the claims for recovery based on the theories of unjust
enrichment and quantum meruit.

**IV. CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Plaintiffs' Motion for Class Certification [Docket No. 74] is

**DENIED**.

BY THE COURT:


                              s/Ann D. Montgomery
                              ANN D. MONTGOMERY
                              U.S. DISTRICT JUDGE

Dated:  March 12, 2010.

13