**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Teng Moua, Juan Martinez, Cheri Martinez, Kua Vang Xiong, Maiku Thao, Cherpao Yang, Bee Vang, Vang Pao Moua, Mailou Xiong Yang, Vangxue Yang, Eng Thao, Choua Moua, Meshack Balira, Ferdinand Nyambarya, VMS Inc., Richard Chang, Lee Wong Chang, Khonekham Dejvongsa, Nouphet Dejvongsa, Diego Cortez Dominguez, Mohamud Egal, Mohamed Osable, Hussein Osable, Ifran Jimale, Layla Jimale, Mohamed Jimale, Paul Bel George, Chue Hang, Tong Thao Hang, Rexhep Krasniqi, Tou Lor, Mai Moua Vue, Arif Metushi, Wa Her Moua, Mee Yang, John Schroeder, Judy Schroeder, Berhane Tesfai, Dual Cykao Thao, Xong Thao Yang, Kou Thao, Yang Xiong, Kevin Vilavong, Chong Xiong, Ko S. Xiong, Blia Yang, Ying Cheng, Chang Yavang, Choua Lor, Mai Blia Yang, Pang Yang, Lue Her, | No. 08-CV-4942 (ADM/JSM) **DEFENDANTS' RESPONSE TO CONFIDENTIAL AFFIDAVIT OF PLAINTIFFS' COUNSEL FOR *IN CAMERA* REVIEW** |
| Plaintiffs, | |
| v. | |
| Jani-King of Minnesota, Inc., a Texas Corporation, Jani-King International, Inc., a Texas Corporation, George Selman, a Minnesota resident, and Steve Schmidt, a Minnesota resident, | |
| Defendants. | |

**INTRODUCTION**

Based on the redacted information that Defendants received, Plaintiffs' Counsel's affidavit does not demonstrate that Counsel conducted a reasonable investigation into the written discovery answers they served on behalf of Plaintiffs.

On its face, the affidavit appears to describe a complete, multi-step process. That process, however, does not match the parties' experience in discovery. The nearly

verbatim written discovery responses that Counsel provided for all Plaintiffs on some topics, the nearly verbatim responses they provided for different co-owners, the sheer number of errors in the written responses, and the magnitude of the gulf between what the written responses claimed and what individual Plaintiffs testified to during their depositions all point to material deficiencies in Counsel's investigation.

On closer examination, the material deficiencies in Counsel's investigation appear as gaps in Counsel's affidavit, including the following:

- the lack of any explanation for how Counsel dealt with language barriers;

- Counsel's admission that they did not meet or follow up with all Plaintiffs before serving written discovery responses;

- Counsel's failure to explain how their process produced virtually identical responses for nearly every Plaintiff on some claims, when the answers were supposed to be derived from Questionnaires completed by individual Plaintiffs; and

- Counsel's failure to explain how their process allowed the service of written discovery answers that on their face could not be correct in light of a Plaintiff's previous deposition testimony, produced documents, or other information in Counsel's possession or control.

Defendants respectfully ask the Court to probe these gaps and others it detects at the *in camera* hearing, asking Counsel to reconcile the process Counsel's affidavit claims with the results demonstrated in the discovery record before the Court. Defendants have confined this response to the discovery materials they have already submitted, with a few additional exhibits, but many, many more contradictions exist, and their existence supports Defendants' requested relief of an Order compelling Plaintiffs' Counsel to revise each written discovery answer to delete the errors, contradictions, and unfounded

statements, and requiring them to pay Defendants' costs in seeking this relief, as well as its costs in deposing the seven identified Plaintiffs.

## DEFENDANTS' RESPONSE TO COUNSEL'S AFFIDAVIT

Jani-King respectfully asks the Court to inquire into the following deficiencies in Counsel's investigation that appear in Counsel's Affidavit.

### I. Counsel's affidavit suggests that Counsel unreasonably failed to effectively communicate with their clients in light of language barriers.

The redacted information available to Defendants indicates that Counsel conducted their communications with their clients largely, if not entirely, in English, without the aid of interpreters. If this is correct, it is inconsistent both with Counsel's own positions in litigation and with their professional duties.

Based on the redacted information Defendants received, it appears that Counsel communicated with their clients mostly in English. In paragraph 9, Counsel's Affidavit states that they prepared a Questionnaire that "put the discovery requests into plain, everyday English" and sent the Questionnaire to the clients. (Dkt. No. 139, ¶ 9.) The Affidavit also refers to several pieces of correspondence that Counsel sent to their clients. (*Id.* at ¶¶ 8, 12.) From context, it appears that these letters were also written in English. The Affidavit also refers to meetings with Plaintiffs without indicating when, if at all, a language other than English or interpreters were used. (*Id.* at ¶¶ 14, 15, 21, 22.)

To the extent Counsel relied on English to communicate with all of their clients, their practice is directly inconsistent with the positions they have taken in this litigation. Counsel argued on behalf of their clients in the Amended Complaint that Jani-King had

an obligation to provide interpreting and translating services in connection with its arms-length transactions with Plaintiffs. (Am. Compl. (Dkt. No. 54) ¶¶ 56-59). Later, they insisted that Jani-King provide and pay for interpreters at over 30 depositions. Based on the results of those depositions and the discrepancies between the deposition testimony and written discovery answers, it appears that the depositions were the first opportunity that many of the Plaintiffs had to fully and accurately convey their experiences in their native languages.

Counsel's apparent failure to adequately communicate with their clients would be both a failure to conduct a reasonable investigation and a violation of their duties of professional responsibility. Adequate communication between lawyer and client is necessary to render competent legal services, *see* Minn. R. Prof. R. 1.4, and "[a] language barrier does not reduce the attorney's duty to communicate adequately with the client, as required by Rule 1.4." *See* Opinion No. 96-06, Utah State Bar Ethics Advisory Opinion Committee (July 3, 1996). Lawyers must be sensitive to their client's communication difficulties in explaining legal problems and in understanding legal advice. *Id.* "Since communication with a non-English speaking client . . . may only be effective if conducted with an interpreter, it is questionable whether a lawyer can competently represent his or her client without considering the need for, and, in some instances, securing the services of, an interpreter." *See* Formal Opinion 1995-12, Committee on Prof'l and Judicial Ethics, The Ass'n of the Bar of the City of New York (July 6, 1995).[1]

---

[1] The Utah and New York Rules of Professional Conduct are materially identical to Minnesota's and are based on the ABA Model Rules of Professional Conduct.

Jani-King respectfully requests the Court to inquire into the steps Counsel took to bridge the language barrier with their clients and to determine whether, in light of the pervasive contradictions that resulted between the written discovery responses and the deposition testimony, those steps were reasonable.

> **II.     Counsel's affidavit suggests that Counsel unreasonably failed to meet with some Plaintiffs before serving written discovery responses on their behalf.**

Counsel's affidavit states that "[p]rior to signing their verifications, each Plaintiff was presented a copy of their discovery responses. *Typically*, this process included a face to face meeting with the Plaintiff," but "[*i*]*n a few instances*, [Counsel] was unable to meet face to face with a particular Plaintiff to review their discovery responses due to scheduling difficulties." (Dkt. No. 139, ¶¶ 15, 17 (emphasis added).) The redacted material provided to Defendants does not indicate how many individuals Counsel did not meet with, who those Plaintiffs are, and how they correlate with the contradictions between the written discovery and deposition testimony that has caused unnecessary expense for Defendants. Defendants respectfully request the Court to obtain a complete list of these Plaintiffs and inquire into the steps Counsel took to conduct an adequate investigation for their answers.

> **III.    Counsel's affidavit does not explain how their process produced virtually identical responses for nearly every Plaintiff on some requests, when the answers were supposed to be derived from Questionnaires completed by individual Plaintiffs.**

According to Counsel's affidavit, Counsel followed an individualized process to prepare responses to Defendants' written discovery requests. Counsel states that, "when

5

we received a completed Questionnaire from a client, [Counsel] relied upon the information provided" to prepare the written discovery responses. (Dkt. No. 139 ¶ 13.) Similarly, in the instances with "[s]ome Plaintiffs" where Counsel met in person, they "relied upon the information provided" in the those meetings to prepare the responses. (*Id.* at ¶ 14.)

Despite this process, however, Counsel served virtually verbatim responses on behalf of most Plaintiffs to many of Defendants' written requests. To give just one example, forty-one of forty-three Plaintiffs gave boilerplate answers to Jani-King's Interrogatory No. 5 claiming that false statements existed in Jani-King's Uniform Franchise Offering Circular ("UFOC claim"). (*See* Jani-King's Oral Argument – Record Excerpts Binder at Tab 3.) The answers of some Plaintiffs referred to non-existent prior deposition testimony. (*Id.*) Conversely, the answers of some Plaintiffs who *had* previously been deposed in the class certification phase did not refer to their testimony. (*Id.*)

When Defendant deposed the Plaintiffs, their answers regarding their UFOC claim were anything but verbatim. The record shows the following contradictions between the written discovery responses and the deposition testimony:

- John Schroeder expressly disavowed his interrogatory response regarding the UFOC (*See* Defs.' Br. at 10; Dkt. No. 131-1 at 98 (Ex. 25); Dkt. No. 131-5 at 119-20 (Ex. 70));

- Diego Cortes Dominguez testified that everything in the UFOC is true (*See* Defs.' Br. at 11; Dkt. No. 131-2 at 18 (Ex. 18); Dkt. No. 131-6 at 87-88 (Ex. 63));

- Tou Lor testified that there are no untrue statements in the UFOC (*See* Defs.' Br. at 14; Dkt. No. 131-3 at 43 (Ex. 32); Dkt. No. 131-7 at 185-86 (Ex. 79));

- Nouphet Dejvongsa testified that he did not claim that he relied on anything in the UFOC in purchasing his franchise or that any statement in the UFOC is false (Ex. A at 24-26); and

- Blia Yang testified that he did not rely on any anything in the UFOC in purchasing his franchise or that any statement in the UFOC is false (Ex. B at 37-42).

Defendants respectfully ask the Court to investigate how Counsel's purportedly individual process produced verbatim responses that were later contradicted in so many ways in the depositions. Specifically, Defendants request the Court to require Counsel to produce the completed Questionnaires for every Plaintiff who completed one, so the Court can compare the Questionnaires to the verbatim discovery responses.

**IV.    Counsel's affidavit does not explain how their process allowed the service of written discovery answers that on their face could not be correct in light of a Plaintiff's previous deposition testimony, produced documents, or other information in Counsel's possession or control.**

Many of the written discovery responses that Counsel served were facially implausible in light of prior deposition testimony, documents that were previously produced, or their near-verbatim symmetry with answers provided by other Plaintiffs. Counsel's failure to describe any safeguards for identifying and correcting these facial defects is evidence of an unreasonable investigation.

In some cases, Counsel served written responses that directly contradicted the Plaintiff's prior deposition testimony. For example, Mailou Xiong Yang testified during the class-certification phase that Jani-King did not owe her any initial business when she

7

purchased her franchises. (Ex. C at 133-34.) Yet, the response Counsel served on her behalf to Interrogatory No. 5 stated that she claimed that the UFOC contained false statements regarding initial business. (*See* Dkt. No. 131-2 at 96 (Ex. 27).)

In other cases, Counsel served written discovery responses that directly contradicted documents in Counsel's possession. For example, the written responses for many Plaintiffs asserted that Jani-King had failed to meet its obligation to offer them a certain amount of business opportunities. (*See generally* Plaintiffs' responses to Interrogatory 5 in Jani-King's Oral Argument – Record Excerpts Binder at Tab 3.) The documents for several of these Plaintiffs, however, showed that they had bought their franchises not from Jani-King, but in transfers from existing franchise owners—which meant that Jani-King by definition had no initial business obligation to them. (*See, e.g.*, Ex. D at §3.5.)

In many cases, Counsel submitted nearly-identical discovery responses for co-owners of a franchise. During depositions, Defendants learned that some co-owners did not have any personal knowledge regarding the facts asserted in their interrogatory responses Counsel had served for them. For example, Mohamud Egal's interrogatory answers declared that "Jani-King took accounts away from me without giving the opportunity to fix any alleged mistakes in my cleaning." (Dkt. No. 131-1 at 40 (Ex. 10.) He later testified at his deposition, however, that his claims against Jani-King related solely to activities that took place when he was no longer operating his franchise, showing the interrogatory answer to be unfounded. (Dkt. No. 131-4 at 68-72 (Ex. 52).)

It turned out that the interrogatory answer belonged solely to co-owner, Hussein Osable. (*See* Dkt. No. 131-1 at 48 (Ex. 11).)

Jani-King respectfully asks the Court to determine whether Counsel took reasonable steps to ensure that the written discovery responses they drafted and served for Plaintiffs were not facially inconsistent with facts already in Counsel's possession.

**V. Jani-King served the proper number of interrogatories, and Counsel's objection to their number does not excuse their failure to conduct a reasonable investigation.**

Counsel's affidavit objects that Jani-King "exhausted [its] allotted ten interrogatories with the first question of number 4" and suggests that sanctions are therefore inappropriate based on false and unsupported answers to any further interrogatories. (Dkt. No. 139 ¶¶ 25-26.) That is both factually and legally incorrect.

Jani-King served a total of eight Interrogatories. Each of the first five Interrogatories asked the individual Plaintiff to state whether he or she was asserting a particular count in the First Amended Complaint, and if so, to describe the factual basis for that claim. (*See e.g.*, Dkt. No. 131-1 at 76-79 (Ex. 14).) To ensure that each Plaintiff was reminded of the Complaint's allegations for each count and gave a complete answer, the interrogatories reprinted the allegations. (*Compare* First Amended Complaint (Dkt. No. 54) *with* Interrogatories (Dkt. No. 131-1 at 76-79) (Ex. 14).) Each of these interrogatories was a single request. The last three interrogatories asked standard questions regarding damages, knowledge of other fact witnesses, and the basis for denying Requests for Admission. Plaintiffs did not seek a protective order or

clarification from the Court regarding the number of interrogatories allowed. They were therefore bound to answer the interrogatories.

Even if the objection to the number of interrogatories had some basis, however, once Counsel provided answer to the interrogatories, they were fully bound by the duty to provide answers only after a reasonable investigation. Their objections therefore provided no excuse for the failures evident in the record.

> VI. **Defendants should be awarded costs for the depositions that were made necessary only by Counsel's service of false interrogatory answers made without a reasonable investigation.**

Counsel again asserts that Jani-King intended to depose every Plaintiff, regardless of the interrogatory responses served. (Dkt. No. 139 ¶ 21.) The record does not bear out their claim.

Plaintiffs served discovery responses on a rolling basis. (*See* Dkt. No. 135 at 11.) Some Plaintiffs did not respond to discovery in a timely fashion, while others did not respond at all. (*See* Dkt. No. 109.) Defendants issued deposition notices to assure that they had reserved their right to depose every Plaintiff, if necessary, before the close of discovery. When Jani-King learned in advance through other deposition testimony that it was likely unnecessary to depose a Plaintiff, it notified Counsel. (*See* Dkt. No. 131-1 at 1-2 (Ex. 1).) Jani-King explained to Counsel in its October 15, 2010 letter that "it is contrary to the Rules of Civil Procedure to force the opposing party to take a deposition for the purposes of establishing on the record that previously-submitted written discovery responses are false." (Dkt. No. 131-1 at 2 (Ex. 1); *see also* Dkt. No. 131-1 at 14-17 (Ex. 4.)

10

If Counsel had served accurate answers based on a reasonable inquiry, Jani-King would not have deposed *at least* the seven Plaintiffs it identified in its moving papers. For example, Jani-King deposed Mohamed Jimale because his interrogatory responses stated he had several claims against Jani-King and personal knowledge regarding those claims. (*See* Ex. E.) At his deposition, however, Jimale admitted that he knew very little about the operation of the franchise and testified that he "go[es] by what our father tells us." (*See* Dkt. No. 131-1 at 13 (Ex. 4.) Jimale's deposition would have been unnecessary had Counsel conducted a reasonable investigation and served written discovery answers reflecting Jimale's actual, personal knowledge.

It is not the proper procedural context in this opposition to Counsel's affidavit for Jani-King to provide the Court with the deposition transcripts and discovery responses at issue for the seven Plaintiffs it asserts it would not have deposed, as well as the deposition transcripts and discovery responses of their co-franchise owners. Cumulatively, they show that the seven depositions at issue were unnecessary. If the Court would find this additional material helpful, Jani-King will gladly provide it.

## CONCLUSION

The pervasiveness of the errors in the written discovery responses served by Counsel establishes that the most reliable record in this case is each Plaintiff's deposition testimony. The gaps in Counsel's affidavit shows that the pervasive errors arose out of Counsel's failure to make a reasonable inquiry. Defendants therefore respectfully request that the Court sanction Counsel by requiring them to revise all written discovery

11

responses to eliminate inaccuracies and contradictions, and to pay Defendants' costs and fees incurred in seeking relief, and in taking the seven unnecessary depositions.

Dated:  February 23, 2011               **FAEGRE & BENSON, LLP**

                                        s/ Eileen M. Hunter
                                        Kerry L. Bundy (MN #266917)
                                        *kbundy@faegre.com*
                                        Myriam Pierre Warren (MN # 0389804)
                                        *mwarren@faegre.com*
                                        Eileen M. Hunter (MN #0336336)
                                        *ehunter@faegre.com*
                                        Christopher J.L. Diedrich (MN #0389442)
                                        *cdiedrich@faegre.com*
                                        FAEGRE & BENSON, LLP
                                        2200 Wells Fargo Center
                                        90 South Seventh Street
                                        Minneapolis, Minnesota 55402
                                        (612) 766-7000

                                        **Attorneys for Defendants**

fb.us.6434622.02